[No. 4212.  Decided September 13, 1902.]

W. J. YARWOOD, *Respondent,* v. H. P. JOHNSON *et al.,* *Appellants.*

EQUITABLE ACTIONS — PLEADING — RELIEF UNDER FACTS ALLEGED.

Plaintiff being entitled in an action of equitable cognizance, under the prayer for general relief, to such relief as the pleadings and evidence warrant, a complaint will not be treated as uncertain and ambiguous because it states facts which might justify an accounting, injunctive relief, quieting title, or the declaration of a trust, inasmuch as the court would be authorized in granting relief on any theory that was sustained by the facts alleged.

SAME — ELECTION OF CAUSE OF ACTION.

In an action by plaintiff to quiet title to a mining claim which had been relocated by a tenant in common in his own interest, or have the relocation declared in trust for the tenants in common, it was not error to refuse to compel plaintiff to elect between his allegation that sufficient assessment work had been done to render relocation invalid, or if such work had not been performed it was by reason of the fraud of the defendant who was charged with that work, since more than one state of facts might establish the wrong and justify the relief demanded.

MINES AND MINERALS — ASSESSMENT WORK.

Where the necessary amount of assessment work was done on a mining claim during a certain year, the presumption would be that it was done by the co-owners, or some of them, in the absence of proof to the contrary, although the evidence may not clearly establish by whom the work was done.

SAME — DISCOVERY OF MINERAL — RELOCATION — ESTOPPEL OF SUB-
SEQUENT LOCATOR.

A subsequent locator of a mining claim who has never been
thereon, but located it by an agent, is estopped from claiming
that the first locators made no discovery of mineral on the claim,
when his agent was one of the owners under the prior location
and such agent admits in his answer to an action by one of the
former owners that there had been a discovery of mineral under
the prior location.

SAME — TENANTS IN COMMON — FRAUD AGAINST CO-TENANTS.

Where the evidence shows that a co-tenant in a mining claim,
who was charged by the other co-tenants with the performance
of the assessment work thereon, relocated the claim on the ground
of failure of assessment work, in the name of his brother, who
had never been thereon, but who had knowledge of all the facts,
the court was warranted in finding that such a co-tenant had
entered into a conspiracy with such subsequent locator for the
purpose of defrauding the real owners of the claims.

SAME — RELOCATION BY CO-TENANT — EFFECT.

A relocation of a mining claim by one of the co-tenants
therein constitutes an entry in behalf of all his co-tenants.

SAME.

Where a co-tenant relocates a mining claim in the name and
interest of other parties than the original owners, all work done
on the claim and discoveries made therein under the relocation
inure to the benefit of his co-tenants.

Appeal from Superior Court, Spokane County.—Hon.
GEORGE W. BELT, Judge. Affirmed.

*Merritt & Merritt, Frank D. Allen* and *Albert Allen,*
for appellants.

*Happy & Hindman,* for respondent.

The opinion of the court was delivered by

WHITE, J.—The complaint in this action, in substance,
alleges a discovery of a vein, lead, ledge, or lode of quartz
and other rock in place, bearing gold, silver, lead, copper,
and other valuable mineral deposit, on government land,

and the location of the "Tenderfoot." claim thereon on
March 13, 1896, by Geo. A. McDonald and Peter Simons,
and that on March 2, 1897, Simons conveyed a one-sixth
interest to one James Davis, and thereafter, in 1897, Davis
conveyed said one-sixth interest to plaintiff; that by mesne
conveyances through the original locators and J. P. O'-
Farrell, one of the appellants, H. P. Johnson, became
the owner of a one-sixth interest therein, January 29,
1898; that, although this one-sixth interest was conveyed
to appellant H. P. Johnson, one-half of said one-sixth in-
terest was conveyed to him in trust for the appellant Wil-
liam Johnson, and that ever since said deed of January
29, 1898, the appellants, and each of them, owned therein
as tenants in common, each owning an undivided one-
twelfth; that during the years 1896 and 1897 $100 worth
of work was done each year upon the claim; that for more
than four years last past, and also during all the times
respondent and appellants were tenants in common in said
property, the appellant H. P. Johnson acted as the agent
for respondent, for hire, in the management of said prop-
erty, and in performing respondent's *pro rata* part of the
assessment work required by law to be performed thereon,
and that in the year 1898, in pursuance of said general
agency, appellant H. P. Johnson, at respondent's special
instance and request, undertook, promised, and agreed to
perform plaintiff's *pro rata* share of the assessment work
thereon, for which respondent paid him $20; that respond-
ent has been informed and verily believes that over $100
worth of assessment work was performed upon said claim
during the year 1898 by the owners thereof, but that, if
it was not so performed, respondent alleges that it was
through the fault, fraud, and negligence of the appellants
Johnson, and each of them; that by the conduct of appel-
lant H. P. Johnson in assuming, undertaking, and agreeing

to act as agent or trustee for respondent with respect to respondent's undivided interest in the property, and relying thereon, respondent was prevented from protecting his said interest and the interest of his other co-tenants in the property by his own personal attention and work, and the respondent alleges that the appellants, and each of them, are estopped from asserting any interest in the property adverse to respondent; that while appellants and respondent were still co-tenants, and while H. P. Johnson was still agent for respondent, on January 1, 1899, H. P. Johnson entered upon the property, posted a notice, and staked the ground,—in other words relocated or attempted to relocate the ground, in the name of William Johnson, under the name of the "Log Cabin" claim, and recorded it, etc.,—and that appellant William Johnson had full knowledge of all the facts, and that, although said attempted relocation was made in the name of William Johnson, it was in fact made in William Johnson's name as trustee for the use and benefit of respondent and the appellants, and each of them, as their interests may appear, and that whatever interest William Johnson acquired under the relocation inures to the benefit of respondent and appellants; that appellants, and each of them, recognized respondent's interest therein, and agreed that respondent owned a one-sixth interest therein; that appellant William Johnson agreed that, whatever interest he acquired in said property by said relocation or attempted relocation, he held it in trust for the respondent to the extent of a one-sixth interest; that in the month of January, 1899, and at divers times too numerous to mention, both appellants agreed to convey to respondent his one-sixth interest upon payment of his proportionate share of the expenses in operating and improving said mine and in performing the annual assessment work thereon, which proposition respondent ac-

cepted; that prior to commencement of this action respondent demanded an accounting of appellants as to the amount of work and labor performed upon said property, and the amount of money expended thereon, and tendered and offered to pay appellants his proportionate share thereof, and demanded that appellants, and each of them, convey to him his one-sixth interest therein, which they refused to do, etc.; that appellants, and each of them, have ousted respondent from possession, and refuse to permit him to enter into the joint possession thereof with them, and refuse to allow him to mine or extract ores therefrom; that appellant William Johnson and wife have conveyed a one-sixth interest to appellant J. P. O'Farrell; that appellants have extracted and sold large bodies of ore, of the value, as respondent believes, of $5,000, and that they are still working the same; that the only value of the property consists in the ores; and that there is no adequate or speedy remedy at law for the waste complained of. The complaint further alleges appellants are extracting ores from the mine, and that the value of the mine is being destroyed, and that there is no adequate remedy at law for the waste, etc. The prayer of the complaint is for an accounting for money expended on the claim, and the amount of ores extracted therefrom, and the expense of so extracting and marketing the same, and that respondent have judgment for one-sixth of the value of all ores extracted, after deducting the expense of marketing the same; that appellants Johnson, and each of them, be decreed to hold a one-sixth interest therein for the use and benefit of, and in trust for, respondent, and that, if the net proceeds of ore extracted by appellants be not sufficient to pay respondent's *pro rata* share of operating and improving the mine, then that the court decree the amount respondent shall pay appellants, and that appellants be compelled to convey to re-

spondent a one-sixth interest in the property, and that appellants be enjoined from working the mine; and for such other and further relief as may seem meet and equitable.

To this complaint each of the appellants demurred on the ground that it did not state facts sufficient to constitute a cause of action. The court overruled the demurrers, and its action in this respect is assigned as error. The appellants contend that the specific cause of action relied upon is uncertain, and cite us to *Supervisors of Kewaunee County v. Decker,* 30 Wis. 624, where it is said:

"It thus appears that the authorities relied upon do not sanction the proposition, that a complaint in the first instance and where challenged by demurrer, may be uncertain and ambulatory, purposely so made, now presenting one face to the court and now another, at the mere will of the pleader, so that it may be regarded as one in tort, or one on contract, or in equity as he is pleased to name it and the necessities of argument require, and if discovered to be good in any of the turns of phases which it may thus be made to assume, that it must be upheld in that aspect, as a proper and sufficient pleading by the court. . . . These distinctions continuing, they must be regarded by the courts now as formerly, and now no more than then, except under the peculiar circumstances above noted, can any one complaint or count, be made to subserve the purposes of two or more distinct and dissimilar causes of action at the option of the party presenting it. It cannot be 'fish, flesh or fowl' according to the appetite of the attorney preparing the dish set before the court. If counsel disagree as to the nature of the action or purpose of the pleading, it is the province of the court to settle the dispute. It is a question when properly raised which cannot be left in doubt, and the court must determine with precision and certainty upon inspection of the pleading to what class of actions it belongs or was intended, whether of tort, upon contract, or in equity, . . ."

The cause of action is the wrong complained of,—in this case, the withholding from the respondent of the one-

sixth interest in the mining claim mentioned in. the pleadings, and, in connection with such withholding, the removal of ore from the mine. More than one state of facts may justify the relief demanded. The prayer of the complaint was for an accounting, for injunctive relief, and that the respondent might be decreed to be the owner of a one-sixth interest in the mine. Under the facts set out in the complaint, the relief prayed for might have been granted, and the court might have decreed (which it, in effect, did) that the relocation of the mine was a cloud upon the respondent's title. The complaint alleges that the assessment work for 1898 was done. If such was the case, appellants' attempted location was absolutely void, and to that extent the complaint states facts sufficient to constitute a cause of action. Even if this were not the case, the complaint, among other things, sets up that respondent and appellants were co-tenants, and while such relation existed a relocation of this claim was made; and it is asked that appellants be declared to hold said property in trust for the use and benefit of this respondent. Such allegation, again, constitutes a good cause of action. The prayer was one for general relief, and under such prayer the court can give such relief as the pleadings and evidence warrant. *Dormitzer v. German S. & L. Society,* 23 Wash. 132 (62 Pac. 862). In the case of *Damon v. Leque,* 14 Wash. 253 (44 Pac. 261), we said:

"If a plaintiff sets forth facts constituting a cause of action and entitling him to some relief, he is not to be turned out of court because he has misconceived the nature of his remedial right."

See, also, *Chambers v. Hoover,* 3 Wash. T. 107 (13 Pac. 466); *Smith v. Wingard,* 3 Wash. T. 291 (13 Pac. 717); *Titlow v. Cascade Oat Meal Co.,* 15 Wash. 652 (47 Pac.

19). In the case of *Meeker v. Gilbert,* 3 Wash. T. 369, 381 (19 Pac. 82), it is said:

"The form or manner of the allegations has no significance in that regard; the prayer of the plaintiff or defendant is without weight. The manner in which the parties may have thought best to treat it in their pleadings is unimportant; the question is as to the facts alleged."

See, also, *Watson v. Glover,* 21 Wash. 677 (59 Pac. 516).

It is further claimed that the court erred in not requiring the respondent to elect upon which of the allegations in paragraph 9 of the amended complaint he would stand; the first allegation being that "over $100 worth of work was done in 1898, and the second allegation being that, if the same was not so performed, it was through the fault, fraud, etc., of the defendants." The court did not err in refusing to compel the respondent to elect. Under either state of facts alleged the respondent was entitled to the relief he demanded. As we have said, the cause of action was the wrong complained of, and more than one state of facts might establish the wrong, and justify the relief demanded. Under the code system of pleadings, we see no reason why all the facts justifying the relief may not be stated, and, if necessary, in the disjunctive, as in this case. In so stating facts, two causes of action are not united in one suit. The action remains but one cause of action. The facts stated in the complaint clearly entitle the respondent to equitable relief, and the court properly overruled the demurrers and denied the motion requiring the respondent to elect.

H. P. Johnson and William Johnson answered. The answer of William Johnson denied that McDonald and Simons discovered a vein, lead, ledge, or lode of quartz

and other rock in place, bearing gold, silver, lead, and copper, etc., and denied that the assessment work was performed on said mine during the year 1898. For an affirmative defense, his answer alleged that on the first day of January, 1899, having theretofore discovered on unappropriated and unoccupied lands of the United States a lode or ledge of mineralized rock, bearing gold, silver, lead, and other precious metals, he located said claim, etc. The answer of the appellant H. P. Johnson admitted that in January, 1898, he became the owner of an undivided one-sixth interest in the Tenderfoot lode mining claim, and was thereafter recognized and considered as a tenant in common in and to said property; admitted that McDonald and Simons discovered a vein, lead, ledge, or lode of quartz or other rock in place, bearing gold and silver, etc., but denied that the assessment work was done upon said property in the year 1898. The answers of the Johnsons contained other denials and statements, but we do not deem it necessary to set them forth. We think the evidence in this case establishes the following facts: That on or about the 23d day of March, 1896, George McDonald and Peter Simons discovered a vein, ledge, or lode of quartz and other rock in place, bearing gold, silver, and other valuable mineral deposits, on the lands in question, being then unappropriated government lands. On the same day they properly staked said ground, and posted the required notice thereon, and located the same under the name of the Tenderfoot, and thereafter, on the 9th day of April, 1896, caused said notice to be filed for record in the office of the county auditor of Stevens county, where the land was situated; and thereafter, in the year 1897, work was commenced on this claim, and a tunnel was run from 35 to 50 feet. In the year 1898 the property was owned in common by respondent herein, who held a one-

sixth interest, and by H. P. Johnson, commonly called and known in the record as "Pete Johnson," who held a one-sixth interest; and the remaining interests in said claim were owned by J. P. O'Farrell, Peter Simons, George McDonald, and Fred Fitzgerald. In the years 1897 and 1898 Pete Johnson was working for respondent, and in the year 1897 did the respondent's assessment work on said claim. In the year 1898 Pete Johnson acquired his one-sixth interest in said claim, and in the year 1898 he agreed to, and did, perform what he claimed was the assessment work for himself and the respondent. In the year 1898 over $100 worth of assessment work was done on this claim. During the month of December, 1898, and for several months prior thereto, Pete Johnson was living with his brother William Johnson at the Cleveland camp, about fourteen miles from the claim in litigation. He had heard, about December 1, 1898, from Fred Fitzgerald (one of the owners of said claim), as he asserts (though it was denied by Fitzgerald), that the assessment work on the claim had not been done, and he so informed his brother William at that time. William testified: "I told him the last day of December, 1898, if the work had not been done, to locate it for me." Pete Johnson had not been on the claim after March, 1898, until he went upon it to relocate it, as he says, at the request of William Johnson. William Johnson and the respondent were and still are owners in other mining property situated in that district, and William knew a long time prior to January 1, 1899, the relation that existed between Pete and Yarwood; knew that Pete was a tenant in common with Yarwood and the other parties in the Tenderfoot; and knew that Pete was on this claim in 1898, doing the assessment work for himself and respondent Yarwood. In 1898 the owners of the Silver Queen, an adjoining or near-by claim, had

struck a rich vein or body of ore, and had been shipping considerable ore therefrom. Both the Johnsons knew this in 1898, and thought that the vein on the Silver Queen passed through the property in question. William testified: "From the description Pete gave me of it, I thought there was a good chance of it running through there. Question. Pete told you the Silver Queen was a pretty good property? Didn't he think it was a pretty good property? Answer. I guess it was. They were shipping ore from it. Question. You say Pete said he thought the ledge ran from the Silver Queen through this ground? Answer. Yes, sir." William Johnson had never been on the Tenderfoot prior to January 1, 1899, and was never on the Tenderfoot until in May or June of 1899. On December 31, 1898, he wrote out a notice of the location, and signed it, giving to the claim the name of "Log Cabin." His brother Pete described this property to him, in order to enable him to make out this notice of location. Pete testified: "I told him about where the Tenderfoot was situated, and said, 'Well, you know where it is situated; then you can stake it that way.' Question. You gave him the description? Answer. I gave him the description." After William wrote out the notice of location, he gave it to Pete, with directions to go and locate the claim, and to be careful that no one else got in ahead of him, and William stated that Pete stated to him that he located the same shortly after midnight of January 1, 1899. Pete says that he located it on January 1, 1899, after breakfast. Pete left the same day that his brother drew up the notice, to go to the mine and post it upon the claim. On January 1, 1899, after posting up this notice on this property and restaking the claim, he went back to the home of his brother William, and continued to reside with him for some time thereafter. Pete did not go back upon

the claim until some time in March or April, 1899, at which time he claims that his brother agreed to give him a half interest in the claim if he would go and develop it. Accordingly he went back and commenced work there, and worked there from that time on. He extended a new tunnel on the claim several hundred feet. Immediately after the respondent found out that Pete had attempted to relocate this claim in his brother William's name, he went to see William Johnson, and, in a conversation, respondent asked him about the jumping of this claim. William told him that it would not hurt him; that he calculated to give him his interest; that he intended to give him and Jack O'Farrell their interest in the property. William Johnson denies that he agreed to give an interest to the respondent, but states that he agreed to sell him an interest. The evidence, however, shows that at all times the respondent was claiming and still claims an interest in the Tenderfoot. One of the main questions in dispute is as to whether $100 worth of assessment work was done on this claim in 1898. The testimony of the respondent clearly establishes that more than $100 worth of work was done on the claim in 1898. But altogether ignoring the testimony offered on behalf of respondent, we think the testimony of the appellants shows that at least $100 worth of work was done on this claim in 1898, and that it was not subject to relocation because of failure to do assessment work thereon. L. E. Van Horn, a witness for appellants, says that in 1897 the old tunnel was in 35, may-be 40, feet. W. H. Allen, another witness for appellants, testified that in the fall of 1897 it was in 40 or 50 feet. The Monday before Allen testified in this case, he measured the old tunnel, and found that it was in 89 feet. He further testified that but 12 or 14 feet of new work was done on this old tunnel after December 31, 1898, so that on that

date this tunnel was in from 75 to 77 feet. The testimony of the appellants shows that it was worth $4 a foot to extend this tunnel, some of the testimony putting it as high as $5 a foot. A simple computation on this basis will show that at least $100 worth of work was done on the tunnel in 1898, in extending it the distance it was extended between 1897 and the time it was measured by Allen, deducting the 12 to 14 feet of extension done in 1899. It follows that the rest must have been done in 1898. It is true that the evidence is not clear that all the co-owners did their share of assessment work in 1898, but that makes no difference. $100 worth of work was done upon the claim, and, in the absence of proof to the contrary, the presumption is that it was done by the co-owners, or some of them.

It is also claimed that there was no discovery of mineral by the first locators. The testimony of Yarwood and Fitzgerald is positive as to this discovery. Pete Johnson, in his answer, does not deny the discovery; and William Johnson, in his notice of relocation, although he had never been upon the claim, set out the discovery, and sought to appropriate the land because he then discovered upon it valuable mineral. He was acting through Pete Johnson, as he claims. We do not think, under such circumstances, he should now be allowed to say, in the face of his notice of location and Pete's admissions in his answer, that a discovery had not been made upon this claim by the original locators prior to the location of the Log Cabin. If Pete was his agent, Pete's knowledge of that fact was his knowledge. The court found as follows:

"1. I find that H. P. Johnson and Peter Johnson herein are one and the same party, and I find that H. P. Johnson and William Johnson, defendants herein, are brothers.

"2.  I find that on the 23d day of March, 1896, and a
long time prior thereto, George A. McDonald and Peter
Simons were both over the age of twenty-one years, and
citizens of the United States, and residents of Stevens
county, state of Washington.

"3.  I find that on the said 23d day of March, 1896,
the said George A. McDonald and Peter Simons, and
each of them, discovered a vein, lode, lead or ledge of
quartz and rock in place bearing gold, silver, lead, copper
and other valuable mineral deposits on certain government
land, situate and being in what is known as the Cedar
Canyon Mining Camp or District, in the county of Ste-
vens, state of Washington, and more particularly described
as follows, towit:   Commencing at a post marked No. 1,
at the northeast corner, from thence 300 feet in a westerly
direction to a center end post marked No. 2, thence 300
feet in a westerly direction to a corner post marked No.
3, thence 1,500 feet in a southerly direction to a corner
post marked No. 4, thence 300 feet in an easterly direction
to a center end post marked No. 5, thence 300 feet in an
easterly direction to a corner post marked No. 6, thence
1,500 feet to the place of beginning.   It is bounded on the
north end by the Silver Queen mining claim, situated
about one mile from the Deer Trail mine and about two
and one-half miles south from Cedarville.

"4.  I find that on the 23d day of March, 1896, under
and in conformity with the laws of the United States and
of the state of Washington, relating to the location of
quartz mining claims, said George A. McDonald and Peter
Simons located the above mentioned and described mining
claim, and designated the same by the name of the 'Tender-
foot,' and duly marked the boundaries thereof in conform-
ity with the laws of the United States and of the state
of Washington, and in all other respects complied with the
laws in order to complete said location, designating the
corners of said claim, and the east and west ends thereof by
plainly marked and substantial stakes, placed in the ground
in a substantial and firm manner, so that the boundaries
of said claim could be easily and readily traced, and upon
each and all of said stakes engraved and marked thereon

the designation, object and purpose of said stakes and
monuments, together with the name of the locators, the
date of location and at the same time; within the boun-
daries of said claim and at the point of discovery, posted
a notice of location, containing a description of said
claim, and thereafter recorded the same in Stevens county,
on the 9th day of April, 1896, in Book 'N' of Quartz
Claims of the records of Stevens county, state of Washing-
ton.

"5.  I further find that on the 2d day of March, 1897,
the said Peter Simons hereinabove mentioned, by a min-
ing deed of that date, duly and regularly conveyed an
undivided one-sixth interest in and to the property here-
inabove described, to one James Davis; and that there-
after, on June 28, in the year 1897, said James Davis,
by mining deed, duly and regularly conveyed to the plaint-
iff herein, W. J. Yarwood, said one-sixth interest to the
property herein last above described, and that he, the
said W. J. Yarwood, is still the owner of the same.

"6.  I find that thereafter, towit:  On the 29th day
of January, 1898, by mesne conveyances through the orig-
inal locators and one J. P. O'Farrell, the defendant here-
in, Peter Johnson, became the owner of an undivided one-
sixth interest in and to the property hereinabove described,
known as the 'Tenderfoot' mining claim, and was there-
after recognized and considered as a tenant in common
with the plaintiff herein, and others in and to said prop-
erty, and that he has never parted with his said interest.

"7.  I find that in the years 1896, 1897 and 1898, one
hundred dollars' worth of assessment work was done for
each and every of said years upon the property herein-
above described and that all the conditions required by the
government to hold said claim above described, were duly
and regularly performed by the owners thereof.

"8.  I find that in the year 1898, the defendant herein,
H. P. Johnson, at plaintiff's special instance and request,
undertook, promised and agreed to perform plaintiff's
*pro rata* share of the assessment work on said property,
and that he did so perform the same thereon, for which

services so performed, plaintiff paid said defendant the sum of $8.75, for his compensation therefor.

"9. I find that during the whole of the year 1898 and in the month of January, 1899, George A. McDonald and Peter Simons, the original locators of the property hereinabove described, J. P. O'Farrell, Peter Johnson, W. J. Yarwood, plaintiff herein, and Fred Fitzgerald, were the owners of the premises above described as co-tenants thereof.

"10. I find that while said parties hereinabove mentioned were still co-tenants in said property and co-owners thereof, that the said defendants herein, H. P. Johnson, and William Johnson, entered into a conspiracy to cheat and defraud the plaintiff herein, and the above named co-owners of said property out of their interest in and to said property, and that after entering into said conspiracy to so cheat and defraud the said plaintiff herein, and the other co-owners out of said property, the said H. P. Johnson, in carrying out of the general conspiracy to cheat and defraud his co-tenants out of their interest in and to said property, thereafter, towit: On the 1st day of January, 1899, and while in possession of said premises as such co-tenants, attempted to make a relocation of the ground embraced in said 'Tenderfoot' claim, in the name of his said brother, William Johnson, one of the defendants hereinabove mentioned, by then and there erecting stakes and monuments and posting notice of the same under and by the name of 'Log Cabin' claim; and that thereafter, towit: On the 4th day of January, 1899, he caused said notice or attempted notice of relocation to be recorded in Book 7 of Quartz Claims, at page 194, of the records of Stevens county, state of Washington. That the property so attempted to be relocated is the same property set out and mentioned in plaintiff's complaint, and hereinabove specifically described.

"11. I find that thereafter, towit: On the 30th day of August, 1900, in further carrying out the said unlawful conspiracy to cheat and defraud the plaintiff herein and the other co-tenants in and to said property out of their interest in and to the same, defendant herein, H. P. Johnson,

attempted to make an amended relocation of the attempted relocation of January 1, 1899, in the name of his brother William Johnson, one of the defendants hereinabove mentioned, and that thereafter, towit:   On the 7th day of September, 1900, he caused said attempted amended notice of relocation to be recorded in Book 12 of Quartz Claims, at page 141 of the records of Stevens county, state of Washington.

"12.   I find that at the time of the attempted relocation hereinabove mentioned, and prior thereto, the defendant herein, William Johnson, had full knowledge of all the facts hereinabove mentioned and set out.

"13.   I find that during the year 1899, 1900 and 1901, that one hundred dollars' worth of assessment work was done for each of said years upon said property hereinabove described by the defendant herein, H. P. Johnson, for the owners thereof, and that all the conditions required by law to hold said claim have been duly and regularly performed and complied with by the owners of said property.

"14.   I find that in the year 1899 the plaintiff herein offered to do his assessment work upon said property, but the defendants herein, and each of them, refused to permit him to enter in and upon said premises, or to perform any of the assessment work thereon.

"15.   I find that during all the times hereinabove mentioned, the plaintiff herein had been, and now is, willing to perform his part of the assessment work upon the property hereinabove described, and that he is now, and always has been, ready and willing to pay to the defendant herein, H. P. Johnson, his proportion of said assessment work so performed by the said H. P. Johnson.

"16.   I find that the defendants herein and each of them have ousted the plaintiff and their other co-owners herein from the possession of said property, and have refused to permit him, or either of them, to enter into the joint possession of said property with them, and have refused to permit them, or either of them, to mine said property, or to extract ores therefrom or to make any improvements or do any work thereon.

"17. I find that, prior to the commencement of this action, plaintiff herein demanded an accounting of defendants, and each of them, as to the amount of work and labor performed upon said property, and the amount of ores extracted therefrom, and the amount of money expended thereon, and tendered and offered to pay said defendants, and each of them, his proportionate share thereof."

We think these findings are fully sustained by the evidence. The entry of Pete Johnson in the name of William Johnson on the claim in controversy was a mere subterfuge. We are satisfied it was an entry in his own interest, and the use of his brother William's name was a device arranged between Pete and William to deprive the other owners of their interest in the claim. When Pete undertook to relocate this claim in the name of his brother, the relation of co-tenancy existed between him, the respondent, and the other co-owners of the property, and, so far as any evidence to the contrary appears, such relationship still continues to exist. Pete Johnson was a co-tenant with this respondent. His possession of this property was the possession of his co-tenants. His entry was their entry. The moment that one co-tenant enters upon property, that constitutes an entry of all. Mere lapse of time does not dissolve this relation. When he entered upon the property on January 1, 1899, he entered for the benefit of all co-tenants who were interested with him in the claim. And William Johnson knew that the relation of co-tenancy in this property existed between Pete, respondent, and other parties.

"All acts done by a co-tenant and relating to or affecting the common property, are presumed to have been done by him for the common benefit of himself and the others. The relation between him and the other owners is always supposed to be amicable rather than hostile; and his acts are therefore regarded as being in subordination to the title of all the tenants, for by so regarding them they may be made to promote the interests of all. Therefore, as a general proposition, the entry of one co-tenant inures to the benefit of all. . . . 'The possession or entry of one tenant in common, or joint-tenant, is always pre-

sumed to be in maintenance of the right of all; and he shall not be presumed to intend a wrong to his companions, if his acts will admit of any other construction.' " Freeman, Co-tenancy (2d ed.), § 166.

"The entry of one co-tenant, as we have shown, is in the absence of clear proof to the contrary, construed as conferring seizin upon all. And, supported by the same reasons, and prevailing to the same extent, is the rule that the continuing possession of a co-tenant, whether the entry was made by himself alone or in connection with his companions, is the possession of all the co-tenants." Freeman, Co-tenancy (2d ed.), § 167.

See, also, *McCarthy v. Speed,* 11 S. D. 362 (77 N. W. 590, 50 L. R. A. 184).

From January 1, 1899, the work on this claim and discoveries therein made by the appellants inure to the benefit of Pete and those who were his co-tenants when he made the pretended relocation and entry thereunder on January 1, 1899. *Cedar Canyon Consol. Min. Co. v. Yarwood,* 27 Wash. 271 (67 Pac. 749). The attempted location and relocation under the name of the Log Cabin claim were mere nullities. We do not think the Tenderfoot claim became a thing of the past under the attempted relocation. The Log Cabin location was not a valid one. The co-tenancy of Pete Johnson and the respondent and the other owners of the Tenderfoot had not terminated when the attempted relocation and entry thereunder were made.

The judgment of the court is correct, and should be affirmed, and it is so ordered, with costs to the respondent.

REAVIS, C. J., and ANDERS, DUNBAR, FULLERTON, HADLEY and MOUNT, JJ., concur.