[No. 12926.   Department One.   January 28, 1916.]

H. F. LOUTZENHISER, *Respondent*, v. HUGH PECK *et al.,*
*Appellants.*[1]

CONTRACTS—VALIDITY—LEGALITY OF OBJECT—RESTRAINT OF TRADE
—TIME. A covenant in a bill of sale not to engage in the retail meat
business within a limited locality, for not less than two years, is an
agreement not to engage in such business for two years after the
date of the contract; and hence is not invalid as being without
limitation as to time.

HUSBAND AND WIFE—CONTRACTS OF HUSBAND—SEPARATE ESTATE—
BREACH—EFFECT ON COMMUNITY—CONSIDERATION—INJUNCTION—WIFE
WHEN BOUND. Upon the sale by a husband of his separate business,
a covenant not to engage in the same business in a limited locality
for a limited time is binding upon the community, and precludes him
from making a gift to his wife of his separate estate and setting
her up in such business; the fact that he was supporting the com-
munity from the business sold constituting a sufficient consideration
to the community, so that the community, himself, and his wife could
be enjoined from entering upon the same business with the husband's
separate funds.

INJUNCTION—ACTIONS—RELIEF—DAMAGES—PLEADING—COMPLAINT
—SUFFICIENCY. In an action for an injunction, the objection that the
amount of damages was not stated in the complaint as required by
Rem. & Bal. Code, § 258, cannot be urged at the trial, in the absence
of demurrer or motion, where the complaint alleged the facts from
which the damages flowed and that the same could not be estimated,
and prayed that they be determined and for general relief.

DAMAGES—BREACH OF CONTRACT — CONTRACTS — CERTAINTY — EVI-
DENCE—SUFFICIENCY. A loss of profits in a retail meat business in
a suburban district is shown with sufficient certainty by evidence
that, after defendant opened his shop in the same locality contrary
to his covenant, he took in twenty to twenty-five dollars a day, the
plaintiff's business fell off to about the same extent, and that the
profits in the business generally amount to from twenty to twenty-
five per cent of the gross sales.

DAMAGES—BREACH OF CONTRACT — LOSS OF BUSINESS — PROFITS—
EVIDENCE—ADMISSIBILITY. Where the vendor of an established retail
meat business in a suburban district covenanted not to engage in
the same business within one mile of the location for the period of
two years, loss of profits reasonably ascertainable may be recovered

[1] Reported in 154 Pac. 814.

as damages within the contemplation of the parties; and evidence relating to the business done is admissible as the best evidence of damages of which the nature of the case was susceptible.

HUSBAND AND WIFE—CONTRACTS—SEPARATE CONTRACT OF HUSBAND —BREACH — INJUNCTION — DAMAGES — LIABILITY OF COMMUNITY AND WIFE. Where a husband sold his separate business from which he supported the community, covenanting not to engage in the same business within a limited locality for a limited time, and set his wife up in the same business with his separate funds, he and the community consisting of himself and wife are liable for breach of the covenant; but his wife is not separately liable for the damages, although she may be enjoined from engaging in the business with separate funds of the husband given to her for that purpose.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered January 19, 1915, upon findings in favor of the plaintiff, in an action for an injunction, tried to the court. Modified.

*Carl W. Swanson,* for appellants.

*Don F. Kizer,* for respondent.

ELLIS, J.—Action to enjoin the violation of a covenant not to engage in a certain business for a limited time in a limited locality, and for damages. It is conceded that, prior to July 1, 1913, both the plaintiff and the defendant Hugh Peck were engaged in the retail meat business, on Monroe street, at Nos. 02717 and 02721, respectively, in the city of Spokane; that on that date, Hugh Peck sold his stock, tools and fixtures to the plaintiff, and executed a bill of sale thereof containing a covenant as follows:

"Party of the first part hereto hereby agrees not to engage in the retail meat business as owner, manager or clerk within one mile of New York Market at 02721 Monroe street, Spokane, Spokane county, Washington, for not less than two years."

It is conceded that the defendant Hugh Peck, prior to the sale, had been supporting his family from the business so sold. The defendant Katherine Peck avers in her answer

that, about January 1, 1914, her husband conveyed to her, by bill of sale, certain fixtures, tools and implements for running a meat market at 02721 Monroe street; that the conveyance to her was a gift from her husband, the defendant Hugh Peck; that the property was thereafter her separate property; and that since that time she has been conducting, either personally or through a renter, a retail meat market at that place. The defendant husband testified that he purchased the fixtures and equipped the new market with his separate funds and gave it to his wife. The evidence further shows that he purchased the market sold to the plaintiff with funds acquired prior to his marriage.

The court made findings of fact and conclusions of law in favor of the plaintiff, and thereon entered a decree enjoining the defendants and each of them from engaging in the retail meat business within one mile of 02721 Monroe street, in Spokane, for a period of two years from July 1, 1913, and awarding the plaintiff judgment against the defendants and each of them for the sum of $350 and costs. The defendants have appealed.

The appellants' first claim is that the covenant was invalid, in that it was without limitation as to when the two years should begin or cease. Construing the contract as a whole, the covenant is not even ambiguous. No one reading the contract could have a doubt as to what was meant. It shows an intention, by clear implication, not to engage in the specified business within the specified limits within the period of at least two years from the date of the contract. The intention of the parties as expressed or reasonably implied in a written contract must prevail.

The appellants next complain that both the injunction and the judgment, if any, should have been against the defendant husband alone, because the sale in connection with which the covenant was made was a sale of his separate property. Though the property sold was the property of the husband, it is conceded that it was being used in support of the com-

munity. This fact furnished a sufficient consideration for an undertaking, binding upon the community, not to enter into the same business, at least upon the same capital, for a limited time in the same locality. Stating it in another way, the husband could not avoid the covenant, even conceding it his separate covenant, by turning his property over to his wife as a gift and setting her up in the same business at the same place. To permit him to do so would be to sanction the use of his own property in fraud of the respondent's rights and in palpable evasion of his own covenant. Looking through technicalities to essentials, that is the ultimate end of appellants' position. It is unsound. The court committed no error on the admitted facts in running the injunction against the appellant Hugh Peck and the community. It is equally clear that, under the evidence, there is no error in enjoining the wife also. She was aiding the husband in violating his covenant. A different case would be presented if there had been any evidence that she invested in the new venture money from any other source than the alleged gift from her husband. On such a case, we express no opinion.

It is asserted that the complaint was insufficient to sustain any judgment for damages, in that it contained no allegation of any specific amount of damages suffered, as required by Rem. & Bal. Code, § 258, subd. 3 (P. C. 81 § 223), the last clause of which reads:

"If the recovery of money or damages be demanded, the amount thereof shall be stated."

The claim is untenable. In the complaint it is alleged, in substance, that the ultimate damages cannot be estimated, and the prayer is for an injunction and that the damages already suffered be ascertained and allowed, and for such other relief as may be consistent with equity and good conscience. All the facts from which the damages flowed were pleaded. The appellants were advised of the exact nature of the recovery sought. No demurrer was interposed nor

any motion to make the complaint more specific.  On tardy objection, every intendment will be indulged in favor of the pleading.  Substantial justice is the criterion imposed by statute.  Rem. & Bal. Code, §§ 285, 307 (P. C. 81 §§ 259, 303).  This is specially true where, as here, the action is one of equitable cognizance.  In such a case, under a prayer for general relief, the court is justified in granting any relief consistent with the equities of the case sustained by the facts alleged and proved.  *Yarwood v. Johnson,* 29 Wash. 643, 70 Pac. 123.  This even though the prayer for special relief be defective.  *MacKay v. Smith,* 27 Wash. 442, 67 Pac. 928; *Dormitzer v. German Savings & Loan Soc.,* 23 Wash. 132, 62 Pac. 862.

It is stoutly urged that no damages were proven.  It was shown by a comparison of respondent's sales for the months of August, September, October and November in the year 1913, with his sales for the same months for the year 1914, that the former exceeded the latter in the sum of $2,409.40.  Respondent testified that about the same ratio of loss prevailed during the other months of the year 1914 after appellants reopened their market.  There is also evidence that the appellants were taking in from $20 to $25 a day after they reopened their market.  This would more than equal the falling off of respondent's trade at the same time.  This coincidence in a suburban district such as this, where the public to which the markets catered was necessarily limited, had a strong tendency to show that the one was the result of the other.  There was evidence that the profits of retail meat markets generally amount to from twenty to twenty-five per cent of the gross sales.  No evidence was offered to the contrary.  The loss of profits so computed, even in the four months mentioned, would much exceed the amount of damages awarded by the court.  But it was also shown that there was a general decline in the retail meat business in Spokane during the year 1914.  The court evidently, and we think properly, took this into consideration.  Considered

as a whole, the evidence fairly, and with as much certainty as can usually be attained, established a loss of profits due to the appellant's violation of the covenant in an amount at least equal to the damages awarded.

It is now generally held that lost profits when reasonably ascertainable are recoverable as damages for breach of contract, whenever from the nature of the case they were reasonably within contemplation of the parties as the probable result of its breach when the contract was made. An established business is not a commodity with a fixed market value. It is an investment for the purpose of producing profits. Both the vendor of such a business who covenants not to enter into competition for a given time and in a given locality and the vendee who, as the evidence here shows, pays more for the business because of the covenant, must certainly contemplate at the time, that a breach of the covenant will result in damages by causing a loss of profits. The evidence adduced was the best evidence of the damages of which the case in its nature was susceptible. Such evidence is always admissible. For a decision in a case closely analogous so holding, see *Wittenberg v. Mollyneaux*, 60 Neb, 583, 83 N. W. 842. In *Hitchcock v. Anthony*, 83 Fed. 779, another cognate case, Judge Lurton, in a well considered opinion touching evidence of the same character as that here assailed, said:

"The evidence offered was relevant and competent. It related directly to the business conducted by Anthony both before and after the contract, and before and after its breach, and did not touch any mere collateral business or anticipated collateral profit. The admission of evidence as to the past profits of that business as bearing upon future profits prevented was not error. It was a most important circumstance, which any business man would look to as a factor in any estimate of the future value of a business; and no reason occurs why a jury may not equally as well look to that element in considering whether there were any profits prevented by competition."

As said by the supreme court of New Hampshire in *Salinger v. Salinger*, 69 N. H. 589, 45 Atl. 558:

"During the term of the contract, each day of the defendant's competition constituted a continuing wrong done to the plaintiffs. Their rights were constantly violated, and in such a way that the ensuing loss of profits must have been contemplated by the parties. The plaintiffs are to be compensated for all such damages, if they are capable of computation. *Hurd v. Dunsmore*, 63 N. H. 171, 173, and cases cited; *Crawford v. Parsons*, 63 N. H. 438, 444. That it cannot be demonstrated to a mathematical certainty what profits have or have not come from a certain source of business, is no objection to their recovery."

Finally, it is claimed that no personal judgment should have been entered as against the defendant Katherine Peck binding her separate estate. This contention must be sustained. She was not a party to the contract. Though the circumstances were such as to warrant an injunction against both members of the community personally and as a community, and to warrant a judgment for damages against the defendant husband and the community, there was no evidence warranting a judgment against the wife.

The cause is remanded with direction to modify the judgment in accordance with this opinion. Appellant Katherine Peck may recover her costs in this court.

MORRIS, C. J., MOUNT, FULLERTON, and CHADWICK, JJ., concur.