[No. 27765. Department One. February 21, 1940.]

O. G. MERAGER, *Respondent*, v. ALEX TURNBULL et al., *Appellants*.[1]

712

*Hamblen, Gilbert & Brooke,* for appellants.

*Robertson & Smith,* for respondent.

MILLARD, J.—October 16, 1929, Alex Turnbull and O. G. Merager entered into a conditional sale contract under the terms of which Turnbull sold to Merager all of the personal property used by the vendor in connection with an undertaking business upon the premises owned by the vendor and known as 615 west Fourth avenue, Spokane, Washington. Included in the sale to Merager were the good-will of the business and the right to the use of the name "Turnbull Funeral Home" in the future conduct of the undertaking business. The vendor agreed, as one of the terms of the contract, to refrain from engaging in the undertaking business within the limits of the city of Spokane.

Five thousand dollars of the stipulated purchase price of twenty-two thousand dollars for the business, personal property, and equipment were paid at the time of the execution of the contract. The remainder of the purchase price was payable in monthly installments of one hundred and seventy-five dollars for five months and thereafter at the rate of one hundred dollars monthly. Turnbull and wife executed a lease to Merager (who had been in the undertaking business in St. Maries, Idaho, immediately prior to purchase of the business in question from Turnbull) covering the mortuary building, which was a frame residence remodeled for mortuary purposes, for a term of five years at a monthly rental of seventy-five dollars.

Merager has been in continuous possession of the building and business since the execution of the contract and lease. Turnbull retained no interest in the business or property other than the interest he had under the contract for the purpose of security of payment of the remainder of the purchase price. For

seven and one-half years after the sale of the business, Turnbull, who was not obligated so to do, retained the use of a portion of a desk in the office and assisted Merager gratuitously in handling funerals, etc.

Bruce Turnbull, son of Alex Turnbull, was born in 1899. He was a trained mortician and was a licensed embalmer. He lived in Spokane from boyhood and worked with his father in the undertaking business until the World War, when he enlisted in the United States army. From 1927 to 1937, Bruce Turnbull operated an undertaking business in Sandpoint, Idaho, under the name of "Turnbull Company." Bruce Turnbull closed that business and returned to Spokane because of cessation of lumbering, the town's principal industry.

Negotiations, in which Alex Turnbull participated, between a Mr. and Mrs. Andrews and Bruce Turnbull culminated August, 1937, in a contract between Bruce Turnbull and the Andrews, under which the former was to conduct an undertaking business on Third avenue in a building owned by Mr. and Mrs. Andrews. Bruce Turnbull operated the undertaking business under the name "Turnbull Company" or "Turnbull Company, Funeral Directors." While Merager was entitled thereto, he did not use the name "Turnbull Funeral Home," but operated under the name "Turnbull-Merager Funeral Home."

Early in the operation of the undertaking business by Bruce Turnbull on Third avenue, the son and father published a number of advertisements in the local newspapers in which it was represented that Alex Turnbull was interested with Bruce Turnbull in the undertaking business, and that the business then and there conducted was, in effect, a continuation of the old original Turnbull Company.

Until June 30, 1938, Bruce Turnbull conducted the

undertaking business at the location of the Spokane Funeral Home on Third avenue. He was unable to obtain an extension of his contract with Andrews. Until October, 1938, when the undertakers of the city entered into a written agreement which barred such use of their facilities, Bruce Turnbull handled such business as came to him under an arrangement with one or two undertakers of the city, for which he paid to them a stipulated sum for the use of their facilities. He then utilized a garage on the rear of his father's home property as a preparation room. In the cases handled by him under those conditions, the funeral services were conducted in some church.

Alex Turnbull decided to build a mortuary on his property at the corner of Fourth and Howard streets to aid his son, Bruce. This property was unimproved except for a number of small garages at the rear, and except, also, for the building occupied by Merager on one corner of the block. In November, 1938, plans for the building were announced in the press and the information was given to the public that the business would be conducted therein by both Alex Turnbull and Bruce Turnbull. The notice in the local daily newspaper announced in large letters that

"TURNBULL PLANS FORTY THOUSAND DOLLAR MORTUARY"

which would be occupied by Alex Turnbull and son, Bruce Turnbull.

The business conducted by Merager in the old Turnbull location is at 615 west Fourth avenue, which is the southeast corner of Fourth avenue and Wall street. The southwest corner of Fourth avenue and Howard is the other half of the block of property of Alex Turnbull to the east. That is, the Turnbulls contemplated the erection of a modern mortuary next door, in fact, to the remodeled dwelling house in which Merager was

conducting the business he had purchased from Alex Turnbull for twenty-two thousand dollars under contract which obligated Turnbull to refrain from engaging in the undertaking business within the limits of the city of Spokane.

Merager instituted an action against Alex Turnbull and wife, and Bruce Turnbull and wife, to recover damages and injunctive relief on account of the alleged violation of the restrictive covenant in the contract of sale of the business to the plaintiff, and because of alleged unfair competition in the use of a business name. Trial of the cause to the court resulted in entry of a decree enjoining defendants from operating, engaging, participating, or assisting in any manner in the conduct of an undertaking business under any name in the new structure or upon the premises owned by Alex Turnbull at the corner of Fourth avenue and Howard street. The decree further enjoins Alex Turnbull from engaging or participating in any manner in the conduct or operation of any undertaking business within the limits of the city of Spokane; and enjoins Bruce Turnbull from engaging in the undertaking business within the city of Spokane under any name or designation embracing the word "Turnbull" other than his own individual name of Bruce Turnbull. Plaintiff was awarded recovery in the amount of twenty-five hundred dollars against defendants. Defendants appealed.

 Error is first assigned on admission in evidence of certain exhibits relating to attempt to compel forfeiture of the contract between Alex Turnbull and respondent, and the increasing of the rental of the building leased by Turnbull to respondent.

At the time of the framing of the issues, upon motion of appellants, the following allegation of the complaint was stricken:

"In about the month of May, 1937, in an attempt to

compel plaintiff to surrender and forfeit said contract and the property sold thereunder in order that the defendants Alex Turnbull and Bruce Turnbull might themselves engage in the undertaking business in Spokane, said defendants conspired to harass the plaintiff by making numerous unjustified demands thereon, repeatedly attempting to increase the rental for said premises from the agreed rental of $75 per month to $125 per month."

Counsel for appellants argue that the evidence admitted over objection, prejudiced, as was intended by its introduction, Alex Turnbull in the eyes of the court; and that the admission of the evidence, after the trial court had previously stricken the allegation to which such evidence could only properly be addressed, permitted respondent to not only go into those matters after the allegation had been ruled improper, but also placed appellants at a disadvantage, in that they had not been afforded an opportunity to converse with witnesses regarding that phase of the case.

This is an equity case triable *de novo* on appeal. Evidence improperly admitted will be rejected and the decree based upon evidence, if any, which was admissible. That is, if the evidence of which appellants complain was inadmissible we may eliminate same, and if enough evidence remains in the record to warrant the conclusions and decree of the trial court, the same will not be disturbed. *Clark v. Gerlinger Motor Car Co.*, 100 Wash. 1, 170 Pac. 142.

■ David L. Andrews, with whom appellants negotiated for a place in which Bruce Turnbull could conduct his undertaking business, was called as a witness by respondent. He testified as follows:

"Mr. Alex Turnbull. He came in and said that his son had given up his business at Sandpoint and said that we had this place at 30 West Third and wanted to know if there wasn't some arrangements could be made so that they could go in business at that place, and I

thought a few minutes and I told Mr. Alex Turnbull that I hardly thought it would be a good business proposition because of the fact that there would be two Turnbull establishments in Spokane and I couldn't see how that would work, and he said, 'Well,' he says, 'I haven't been connected with the other Turnbull-Merager Company since 1929 since I sold out to Mr. Merager.' And I told him, I says, 'Mr. Turnbull, I am surprised that you should say that because I have never known but what you were an owner with Mr. Merager right up until now.' And he explained to me, or rather, he told me about the deal, selling out to Mr. Merager; and I told him I didn't think it would work out. And he says, 'Well,' he says, 'Mr. Merager won't be up there more than thirty days, and at the most, sixty days'; that they were having a lawsuit with Mr. Merager and he would be out of there. And I said, 'Well, then, there would be one Turnbull Company.' And I finally told Mr. Alex Turnbull that I couldn't decide, that I would have to take it up with Mrs. Andrews again. And that was about the substance of the conversation that I had."

The foregoing testimony, to which no objection was interposed by appellants, refers to the termination within thirty to sixty days of respondent's contract with Alex Turnbull, and refers, of course, to the exhibits of which appellants complain. The evidence tends to prove, hence was admissible, that Alex Turnbull was interested in the Turnbull Company not only as a father in the affairs of his son, but that he was interested in a financial and substantial way.

Appellants next contend that their acts were open and above board, and that respondent was aware of what they were doing and yet did not complain of appellants' course of conduct for a period of thirteen months; that the contract between Alex Turnbull and respondent obligated the former to not engage in the undertaking business, which implied a course of conduct for pecuniary gain involving financial transactions and the like; and that, as Alex Turnbull did noth-

ing more than to lend financial assistance to his son for which Alex Turnbull would not receive any financial gain, this constituted merely a technical violation of Alex Turnbull's contract with respondent; therefore, respondent is not entitled to substantial recovery.

It is argued that Alex Turnbull, who is now seventy-seven years of age, had arrived at that stage of life where most men desire to retire from business, and that Alex Turnbull did not wish to reenter the undertaking business or any other business; that his transgression of the terms of his contract with the respondent was, doubtless, due entirely to his desire to help his son and not to receive any financial gain.

Appellants admitted in their answer that they contemplated the establishment of an undertaking business and the construction of a building for that purpose on property then owned by Alex Turnbull, which property was subsequently used for the new building. It was admitted by appellants that, upon the commencement of this action, they altered their plans. to the effect that Alex Turnbull would not engage in the undertaking business but would construct a building and lease the same to his son Bruce Turnbull; that their plans were altered because of the commencement of this action.

The record does not sustain the contention that Alex Turnbull did not intend to go into business and that respondent's silence or failure to complain over a period of thirteen months lulled appellants into that sense of security which justified the erection by appellants of a new mortuary. The evidence is clear that respondent's failure to complain or his apparent indifference was never considered by appellants or in any wise influenced their conduct.

The trial court, because of the failure of respondent to object over a period of thirteen months to

720

the course of conduct of the appellants, held that respondent was not entitled to recovery of damages on account of lost profits up to the time of trial. While counsel for respondent argue on appeal that respondent was not guilty of such laches or acquiescence as would, as a matter of law, bar his recovery, no cross-appeal was taken by respondent from that disposition by the court of that portion of the action, hence respondent may not now complain of the trial court's adoption of the position of appellants that respondent's failure to object or protest for thirteen months to appellants' course of conduct constituted acquiescence which barred recovery of lost profits. It does not follow, however, that the award of damages because of injury to the good-will of the business, which had been sold by Alex Turnbull to respondent, is erroneous.

█ Counsel for appellants insist that the trial court disregarded its previous holding that respondent could not recover for profits during the thirteen months' period in which appellants were competing with respondent because of respondent's failure to protest or object to that competition; that is, the trial court adopted lost profits as a basis for determination of damages to good-will. It is also urged that the court was in error in its assumption that the thirty cases, which were all of the cases other than county business handled by Bruce Turnbull, would all have gone to respondent in the absence of the wrongful competition of the appellant.

While the chart disclosing by years respondent's income and the number of cases handled by him in his business declined from 1930 to 1935, it is a matter of common knowledge that, during this five-year period, there was an economic depression which accounts therefor. We notice in the chart, beginning with 1936, an upward trend in the gross income of respondent as

well as an increase in the number of cases handled by him. In 1936, the gross income from respondent's business was slightly more than two thousand dollars over 1935. In 1936 respondent handled nineteen more cases than in 1935. In 1937 the gross income over 1936 was approximately eight hundred dollars. Eighty cases were handled by respondent during the first seven months of 1937. From August 1, 1937, to December 31, 1937, respondent handled forty-seven cases. The gross income of respondent by years was as follows:

| | |
|---|---|
| 1930 | $21,327.82 |
| 1931 | 17,336.41 |
| 1932 | 17,602.50 |
| 1933 | 14,257.29 |
| 1934 | 12,412.20 |
| 1935 | 11,194.24 |
| 1936 | 13,270.61 |
| 1937 | 14,035.85 |
| 1938 | 10,475.24 |

The number of cases handled by respondent for each year is as follows:

| | |
|---|---|
| 1930 | 165 cases |
| 1931 | 112 cases |
| 1932 | 133 cases |
| 1933 | 110 cases |
| 1934 | 92 cases |
| 1935 | 88 cases |
| 1936 | 107 cases |
| 1937 | 127 cases |
| 1938 | 72 cases |

The active competition of appellants with respondent commenced on or about October 1, 1937. The contract of Turnbull to operate the Spokane Funeral Home, as recited above, was executed in August. During October, November and December, 1937, the Turnbulls

handled twenty-six cases, of which ten were county cases; that is, sixteen of the cases were private cases. During 1938, appellants handled thirty-four cases, of which twenty were county cases. During this period, the average profit per case was $50.50. If, from August 1, 1937, to June 30, 1938, business had continued in the same proportion as the first seven months of 1937, it appears that respondent would have received seventy-five additional cases; the loss to respondent would have amounted to $3,787.50. The total income during the same period, if we exclude the county cases, of appellants was approximately $3,510.00. The gain of appellants and the loss of respondent plainly are not disproportionate.

While the measure of damages for impairment of good-will is not the profits which a defendant realized in violation of his agreement, the profit made by defendant may be considered in evidence, if shown to correspond in whole, or in part, with the loss of plaintiff. 12 R. C. L. 996. The gains of appellants coincide with the loss sustained by respondent during the period appellants breached the restrictive covenant of their contract with respondent in the matter of competition. Those gains may be considered in awarding damages.

"Appellants complain of the award of damages which amounted to seven and one-half per cent of their total sales during the period they were in competition with respondent. The correct rule is stated in *Gregory v. Spieker* [110 Cal. 150, 42 Pac. 576], *supra,* as follows: 'In cases like the present the damages are rarely susceptible of accurate proof; but the measure, expressed generally, is the value of the business lost to plaintiff— not the gain of defendant, which may be more or less than plaintiff's loss; though such gain may be considered in evidence, it should be shown to correspond in whole or in part with the loss of plaintiff.' (Note, Ann. Cas. 1914A, p. 1153.)" *General Paint Corp. v. Seymour,* 124 Cal. App. 611, 12 P. (2d) 990.

It is unnecessary to analyze all of the authorities cited by counsel for respondent and counsel for appellants. The trial court did not adopt as the standard of measurement either the amount lost during the thirteen months' period in question by respondent or the amount of the income of appellants during that period of their unfair competition with respondent. All of those figures were taken into consideration by the court, and the rule followed by the trial court is consonant with the principle in *Loutzenhiser v. Peck,* 89 Wash. 435, 154 Pac. 814; *Nelson v. Brassington,* 64 Wash. 180, 116 Pac. 629, Ann Cas. 1913A, 289; 12 R. C. L. 996; *Salinger v. Salinger,* 69 N. H. 589, 45 Atl. 558.

In *Salinger v. Salinger, supra,* the plaintiffs brought an action to recover for loss of profits because defendant, from whom they purchased a business, engaged in the same business in competition with the plaintiffs in violation of the agreement not to engage therein for a period of five years after the sale. It was held that the plaintiffs were not entitled to recover for loss of profits after the expiration of such period, but that evidence of such loss was admissible to show the reduced value of the good-will of the business at the end thereof for which plaintiffs were entitled to recover.

The trial court took into consideration all of the evidence, as clearly appears from the following excerpt from its memorandum decision:

"It is thus seen that the plaintiff during the period named lost to the so-called Turnbull Company actual business in a substantial amount; that the defendants in their advertising and public announcements and otherwise have conveyed the impression to the public generally that they are carrying on the original Turnbull Company; and that they are providing for expansion of their business by the erection of an elaborate new mortuary building at the corner of Fourth avenue and Howard street; that in the new building every modern facility and convenience is being provided for

patrons; and that this building is immediately adjacent to the premises occupied by the plaintiff under his contract with the defendant Alex Turnbull. Taking into account all the facts, there can be no question that the good will of the Turnbull Merager Funeral Home has been seriously and permanently impaired, and it is estimated it has been diminished in value in a sum not less than $2,500."

 The contention that whatever damages may be allowed to respondent should be credited upon his contract with Alex Turnbull, cannot be sustained. We know of no authority in law to justify acceleration of the installments under that conditional sales contract. Respondent was not in default. See 12 R. C. L. 997, § 18.

 The action of the trial court in enjoining Bruce Turnbull from carrying on an undertaking business under any name in the new structure owned by Alex Turnbull at the corner of Fourth and Howard streets in Spokane, is assigned as error.

It is argued that Bruce Turnbull was not a party to the contract of sale by which his father sold the undertaking business to respondent; that the issue of the right of Bruce Turnbull to use the new building was not raised in the pleadings or argued at the trial; and that the leasing by Alex Turnbull of the building at Fourth and Howard to Bruce Turnbull is not in violation of the restrictive covenant of the sale agreement.

In paragraph 6 of appellants' affirmative defense, to which we referred in the discussion of the question of the admissibility in evidence of certain exhibits, it is admitted, and on the stand the appellants testified, in effect, that the only reason they altered their plans for construction by Alex Turnbull of the new mortuary and for father and son to engage in the undertaking business at that place, was commencement of this action. While the authorities are in conflict on the ques-

tion whether the mere lending of money or extension of credit to one engaged in, or about to engage in, a competing business, is a violation of a restrictive covenant such as is before us in the case at bar, a review of those cases is unnecessary. To permit Bruce Turnbull to conduct the undertaking business practically next door to the undertaking business of respondent, would render valueless the rights of respondent under his contract with Alex Turnbull, and the injunction against Alex Turnbull would be a futile gesture. Operations under the guise of assistance to relatives may not be utilized to violate contracts of the character of the one before us. The evidence sustains the decree, which is to the effect that the execution of the lease under which the building owned by Alex Turnbull was to be used by Bruce Turnbull does not reflect the true relationship of the parties.

The question of fact whether Bruce Turnbull and his father entered into a conspiracy to unfairly compete with, and destroy the business of, respondent was determined (the evidence overwhelmingly sustains that determination) in the affirmative. The operations of the father and son constituted unfair competition— a breach of the restrictive covenant of the contract.

"Unfair competition is a question of fact. The question to be determined in every case is whether or not, as a matter of fact, the name or mark used by defendant has previously come to indicate and designate plaintiff's goods, or, to state it another way, whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiff's goods, or his business as plaintiff's business. The universal test question is whether the public is likely to be deceived." *Olympia Brewing Co. v. Northwest Brewing Co.,* 178 Wash. 533, 35 P. (2d) 104.

On the facts, the case at bar is distinguishable from *McKeighan Wachter Co. v. Swanson,* 138 Wash. 682,

245 Pac. 10, 141 Wash. 694, 250 Pac. 353, cited by appellants in support of the argument that the leasing of a building by a father to his son is not a violation of the father's covenant not to re-enter business.

As the evidence amply supports the court's determination of the question of fact whether appellants, by their conduct, are guilty of unfair competition, that phase of the decree enjoining Bruce Turnbull, which is challenged by appellants, should be sustained.

The argument of appellants that the respondent's failure to raise in the pleadings or argue at the trial the issue of the right of Bruce Turnbull to use the new building precludes the relief of enjoining use of the building by Bruce Turnbull, is answered by the prayer of respondent in his complaint for injunctive relief against both appellants and for such other and further relief as might to the court appear just and equitable in the premises. Under that prayer, the trial court had the right to grant any and all relief which was deemed justified under the circumstances.

The decree is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.