[No. 9349.    Department One.    July 14, 1911.]

CHARLES NELSON, *Appellant*, v. JAMES BRASSINGTON, *Respondent*.[1]

.GOOD WILL—SALE—CONSIDERATION. The sale of a butcher business for the fair market value of the personal property, constitutes a good consideration for the seller's accompanying agreement not to engage in such business in the neighborhood for a specified time.

GOOD WILL—SALE—RESTRAINT OF TRADE—AGREEMENT NOT TO COMPETE—BREACH. The sale of a butcher business, with an agreement by the seller not to engage in such business within twelve blocks of the location for a period of two years, is not void as against public policy; and is breached by the seller's conducting a competing business as "manager" which he advertised as his own, although he worked on a salary without any financial interest in the business.

Appeal from a judgment of the superior court for King county, Carey, J., entered October 26, 1910, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, dismissing an action to enjoin a vendor from engaging in a competing business. Reversed.

*Higgins, Hall & Halverstadt*, for appellant.
*Faben & Kelleran*, for respondent.

FULLERTON, J.—On and prior to July 27, 1909, the respondent, Brassington, owned and operated a butcher business in one of the outlying districts of the city of Seattle, and on the date named sold the same to the appellant, Nelson,

[1]Reported in 116 Pac. 629.

executing and delivering to him the following bill of sale and contract:

"Know all men by these presents, that James Brassington, of Seattle, the party of the first part, for and in consideration of the sum of seven hundred fifty ($750) dollars, lawful money of the United States of America, to them in hand paid by Charles Nelson, of same place, the party of the second part, the receipt whereof is hereby acknowledged, does by these presents, grant, bargain, sell and convey unto the said party of the second part, his executors, administrators and assigns, the butcher business consisting of all the fixtures, tools, racks, scales, etc., now in use, and being used for the carrying on of said butcher business, said business and said fixtures, tools, racks and scales being located in the store room designated as No. 4865 Rainier Avenue, Seattle, Washington; said business is known as the Rainier Valley Meat Market; the said party of the first part agreeing to not enter into the butcher business within 12 blocks of said building for a period of two (2) years from this date.

"To have and to hold the same to said party of the second part, his executors, administrators and assigns forever. And James Brassington does for his heirs, executors and administrators covenant and agree to and with the said party of the second part, his executors, administrators and assigns, to warrant defend the sale of the said property, goods and chattels hereby made unto the said party of the second part, his executors, administrators and assigns, against all and every person and persons whomsoever lawfully claiming or to claim the same.

"In witness whereof, I have hereunto set my hand and seal the 27th day of July in the year of our Lord one thousand, nine hundred and nine.

"Signed, Sealed and Delivered     James Brassington. (Seal)
    in the presence of
       "Willard Burbank.
       "J. A. Kelso."

In March, 1910, before the expiration of two years from the time of the execution of the bill of sale, the respondent, with the cooperation of his brother-in-law, began preparations to open up a butcher shop within twelve blocks of the place of business described in the bill of sale.  The brother-

in-law took a lease in his own name of a building near the appellant's market for a term of years and advanced the sum of five hundred dollars to be used in the prosecution of the enterprise. The work of fitting up the market was under the immediate supervision of the respondent. He purchased on his own credit the lumber necessary to fit up the interior of the building and the market fixtures necessary for use in the shop, and seems to have had complete charge of all of the details. He caused a sign to be printed and stretched across the face of the building to the effect that the place would be opened up as a meat market on a certain day under the name of "Yakima Meat Market, James Brassington, Manager." He also requested the editor of the local paper "to give him a boost," and from data furnished by him, the following was produced and published:

"Returns to Columbia.

"James Brassington Will Open Another Meat Market.

"James Brassington, the pioneer butcher of the Rainier Valley, who for many years conducted the Rainier Valley market, opposite the Record office, has returned to Columbia, where he will again go into business.

"Several months ago Mr. Brassington sold his business in Columbia to Charles Nelson and went to North Yakima, where he became associated with the Yakima Meat Company. But the eastern part of the state did not appeal to him like the Rainier Valley and he has returned. He has leased the room formerly occupied by Grayson's hardware store and is having it refitted for a market, which is to be supplied with all the latest and improved sanitary appliances.

"It will be a sanitary market in every sense of the term, Mr. Brassington declares, and will be known as the Yakima Cash Market. Most of the meat will be supplied direct from the abattoirs of the Yakima Meat Company, all being butchered under the closest inspection and sanitary arrangements. Mr. Brassington will also carry fish and game in season, thus affording residents of the Valley a home place to purchase everything in the meat and fish line. He expects to open for business about next Thursday, or Friday."

On these facts appearing, the appellant conceived that the respondent was undertaking to engage in the butcher business in violation of the agreement contained in the bill of sale, and brought the present action to restrain him from so doing. The appellant, in his complaint, set up the bill of sale and the agreement not to enter into business as therein contained, and alleged a violation thereof on the part of the respondent. The respondent defended on two grounds, first, that the agreement not to enter into business contained in the bill of sale was executed by him without consideration; and second, that the business in which he was about to engage was in fact the business of his brother-in-law, one Holly Cooper, and that his only interest therein was that of manager for a stated salary, he having no interest in the profits thereof. The trial court found with the contention of the respondent and entered a judgment dismissing the appellant's action. This appeal was thereupon taken.

The trial court found that the fair market value of the several articles of personal property sold by the respondent to the appellant approximated the sum paid as the consideration for the sale, and hence concluded that there was no consideration for the remaining part of the agreement not to enter into business within the prohibited territory. But this is not the correct test. Courts, in transactions of this kind, do not inquire into the adequacy of the consideration. This, in the absence of fraud or overreaching, is solely the business of the parties. The court inquires only into the legality of the consideration, not whether the party to be bound made an improvident bargain. Here there was manifestly a legal consideration. By the bill of sale the respondent, for a named sum of money, sold to the appellant his business and agreed not to enter into a like business within a distance of twelve blocks of the place of business sold for a period of two years. The payment by the one party of the sum agreed upon furnished a legal consideration for all of the agreements of the other party—the agreement not to enter into business within

the prescribed territory for the term of years prescribed, as well as the agreement to transfer the shop and fixtures. Indeed, the court could, with the same legal propriety, say that the money paid served as a consideration only for the agreement not to enter into a competing business, as it can say that it served as a consideration alone for the shop and fixtures. The almost universal authority is to this effect. A case in point is *Eisel v. Hayes*, 141 Ind. 41, 40 N. E. 119, in which the court says:

"The contract is as follows:

" 'State of Indiana,

" 'Jackson County,

" 'Agreement between John Eisel and W. H. Hayes, witnesseth:

" '1st. Eisel sells and delivers to Hayes the following personal property, viz: 1 butcher's cooler, 1 meat rack (with hooks and pins), 2 meat saws, 2 butcher blocks and one counter, for which said Hayes pays cash in hand the sum of forty-five dollars ($45). And, it is further agreed as a part, of this contract, that said Eisel is not to engage in the butcher business in Brownstown, nor nearer thereto than Seymour, Ind., nor sell any meat within that distance, during the time said Hayes carries on the butcher business in Brownstown, Indiana. Said sum of $45 is now paid by Hayes to Eisel.

" 'Witness our hands and seals this 20th day of March, 1893.

" 'John Eisel,     (Seal.)<br>" 'W. H. Hayes, (Seal.)'

"Appellants contend that the contract does not show any consideration for their promise not to engage in the butcher business at the place and during the time named; that the forty-five dollars was given only for the implements purchased.

"We are of opinion that the whole contract must be taken together, and that the money paid by Hayes was for the transfer of not only the tools sold, but also the good-will promised. The contract is a unit. *Martin v. Murphy*, 129 Ind, 464.

"Besides, 'the mere purchase of the stock in trade of a party is a sufficient consideration for that party's agreement

to abstain from carrying on the particular trade in the place where the purchaser is to engage in it.' *Beard v. Dennis,* Ind. 464.

"In the absence of fraud, the parties are presumed, as in case of any other contract, to have determined the question of consideration for themselves, and the court will not determine its adequacy. *Duffy v. Shockey,* 11 Ind. 70."

So, in 24 Am. & Eng. Ency. Law (2d ed.), p. 852, it is said:

"A contract in restraint of trade is amenable to the general rule that it must be supported by a consideration.

"There has, however, been considerable discussion in the cases upon the question of adequacy of consideration. The earlier cases held that there should be a consideration adequate to the restraint; as Lord Ellenborough said: 'The restraint on one side meant to be enforced should in reason be coextensive only with the benefits meant to be enjoyed on the other.' In a leading case in the Exchequer Chamber, however, the doctrine of the older cases was overruled and the principle established that the court could not inquire into the adequacy of the consideration, provided it was shown to possess some real legal value.

"In numerous cases it has been held that the sale of a business is sufficient consideration for the covenant restraining the vendor from the future exercise of his trade or profession, and that anything more than this is not necessary."

See, also, *Harris v. Theus,* 149 Ala. 133, 43 South. 131, 123 Am. St. 17, 10 L. R. A. (N. S.), 204; *McCurry v. Gibson,* 108 Ala. 451, 18 South. 806, 54 Am. St. 177; *Ryan v. Hamilton,* 205 Ill. 191, 68 N. E. 781; *Up River Ice Co. v. Denler,* 114 Mich. 296, 72 N. W. 157, 68 Am. St. 480; *Kramer v. Old,* 119 N. C. 1, 25 S. E. 813, 56 Am. St. 650, 34 L. R. A. 389.

The trial court erred also we think in its conclusions as to the second question presented. Contracts of this character, when limited as to the time they are to continue, are not inimical to public policy. On the contrary, it is of public interest that every one may freely acquire and sell personal property and property rights. An established business in a

desirable locality has value independent of the actual value of the stock and fixtures that may be on hand. It arises from the fact that the old customers will resort to the old place. This value may be further enhanced by the personnel of the owner or conductor of the business. It is of public interest that the owner and proprietor of such a business should be able to sell it at its full value, and that the purchaser thereof should receive what he desired to buy. Obviously, the only way to obtain the personal element of such a business is to require the vendor to abstain from entering into business in competition with that which he has sold. And while the public interest may be that trade in general shall not be restrained, the law looks with favor upon a contract that enables a vendor to sell his property at its full value, and consequently recognizes and enforces such contracts as he must necessarily make in order to enable him to do so. It therefore looks with favor upon contracts of the nature of the one in suit, and gives it that construction which seems most in consonance with the intent of the parties.

Turning to the agreement, it is at once obvious that it was the purpose of both the vendor and purchaser to transfer to the purchaser, as far as could be done, the personal favor the vendor had with the community in which the market depended upon for patronage. This purpose was accomplished in the only way it could be accomplished; namely, by an agreement on the part of the vendor that he would not enter into a competing business. Now it is likewise obvious that the purchaser will not have the benefit of this part of his bargain if the vendor is permitted to go into a competing business within the prohibited time and prohibited area in any manner by which his personal consideration is thrown in favor of the competing business. The facts in the record show that it is his purpose to do this. The business is advertised as his own. It is to be carried on under a descriptive name, followed by his own name over the title "Manager." No on else publicly appears as having an interest in the business, and naturally

the public would think that in patronizing the new business they were benefiting the manager personally. In other words, he is now attempting to exert in favor of the new business that public favor with which he is regarded, and which he attempted to, and did as far as lay in his power, sell to the purchaser of the old business. In doing so he violated his contract, and the trial court should have entered a judgment restraining him therefrom.

A parallel case is found in *Jefferson v. Markert*, 112 Ga. 498, 37 S. E. 758, wherein this language was used:

"It is contended, however, by counsel for the plaintiff in error, that the judgment of the court was contrary to evidence, in that the testimony shows the defendant below was not the owner of this building, and had no financial interest in the same; and that, therefore, it did not show upon his part a violation of the contract; that he was merely engaged in the service of his wife, conducting the business as her employee. This gives rise, so far as we have been able to ascertain from investigation, to a new question before this court. After a careful reflection over this question, we are satisfied that the principle laid down in the first headnote is a correct statement of the law bearing on this case; and that a person entering into such a contract, not only stipulating for the sale of his good-will to the vendee, but obligating himself not to engage in a business of selling, handling, or packing meats, in the city of Cordele, during a specified and reasonable time, could not, without violating that contract, carry on in that city, during the period covered by the agreement, a similar business for another, or in another name, of which he was the exclusive manager, and the success of which depended upon his skill, efficiency, influence, and popularity. What is a fair and proper construction of the contract into which he entered? There is no question, under the evidence, that the business in which he engaged was in direct competition with the business bought of him by the plaintiffs. One thing he sold to them was his good-will; an obligation not to engage in a similar business in any of its various forms of selling and packing meats in Cordele. In the light of the testimony, there can be no question that he engaged in such business; and, instead of giving the parties

with whom he contracted the advantages of his good-will, he engaged in a service and occupation which directly had the effect of antagonizing and competing with their occupation, to their injury and damage, by the exercise of his skill and experience in the conduct of a similar business. The contract is not confined to preventing him from entering upon such business in his own name, as owner and proprietor thereof. It can be violated as much by an employee and agent, especially one who has the conduct and control of the business, as it could were he the proprietor of the business in which he engaged."

See, further, *Siegel v. Marcus*, 18 N. D. 214, 119 N. W. 358, 20 L. R. A. (N. S.) 769; *Meyer v. Labau*, 51 La. Ann. 1726, 26 South. 463; *Finger v. Hahn*, 42 N. J. Eq. 606, 8 Atl. 654; *Thompson v. Andrus*, 73 Mich. 551, 41 N. W. 683; *Emery v. Bradley*, 88 Me. 357, 34 Atl. 167; *Wilson v. Delaney*, 137 Iowa 636, 113 N. W. 842; *Geiger v. Cawley*, 146 Mich. 550, 109 N. W. 1064.

The case of *Haley Grocery Co. v. Haley*, 8 Wash. 75, 35 Pac. 595, is not contrary to the position here taken. In that case the agreement between the parties was set forth with particularity, and as we said in *Canady v. Knox*, 48 Wash. 685, 94 Pac. 652, "The only purpose was to prevent him [the party bound] from becoming personally interested in the profits of a rival business, either directly or indirectly." It is not so with the contract in the case at bar. The purpose of this agreement was to prevent the vendor exerting his influence and popularity in favor of a rival business, and this the facts clearly show he is proposing to do.

The judgment is reversed, and the cause remanded with instructions to enter a judgment enjoining the respondent from engaging in any manner in the butcher business within the area and period of time limited in the contract of sale set out in the complaint.

DUNBAR, C. J., GOSE, PARKER, and MOUNT, JJ., concur.