Argued October 2, affirmed November 7, 1923, reversed and remanded on petition for rehearing January 22, rehearing denied February 26, 1924.

## STURTEVANT *v.* DOWSON ET AL.

(219 Pac. 802; 222 Pac. 294.)

**Setoff and Counterclaim—"Counterclaim" on Cause of Action, not Matured at Commencement of Plaintiff's Action, not Allowable.**

1. A counterclaim, in which term is included both setoff and recoupment, may not be allowed on a cause not matured at commencement of plaintiff's action, and so not for a breach of contract which had not then occurred; and therefore there was no error in excluding evidence in support of it.

ON REHEARING.

**Setoff and Counterclaim—Counterclaim for Breach of Contract Allowed, Though not Matured at Commencement of Action.**

2. A counterclaim arising under Section 74, subdivision 1, Or. L., for breach of contract, may be allowed, though not matured at commencement of plaintiff's action.

Evidence—Testimony of Expert as to Value of Goodwill Admissible.

3. Testimony of one connected with a business, as to the value of its goodwill, should have been admitted.

Goodwill—Value of Goodwill Held for Jury.

4. The value of the goodwill in a sale of a business is a question for the jury on counterclaim for seller's breach of contract not to engage in similar business.

From Lane: G. F. SKIPWORTH, Judge.

Department 1.

This was an action on a promissory note given on the seventeenth day of January, 1921, in the sum of $2,142.44, and in effect payable on demand. The complaint alleges such demand and credits the defendants with certain sums paid by them and indorsed in the note, leaving an alleged balance of $2,088.92, for which sum plaintiff prays judgment, together with attorney's fees. The note was originally given to E. C. Sturtevant, the wife of plaintiff, and by her indorsed to plaintiff, who brought the action.

As a first defense it is alleged that E. C. Sturtevant, the original payee of the note, was in possession of a store building at Crow, Oregon, and that she was there engaged in the mercantile business, together with her husband; that C. C. Sturtevant was postmaster and had the postoffice in the store building at Crow, Oregon, which fact drew many customers to the store, and that he owned certain postoffice fixtures therein; that Crow is a small place, in the country and off from any railroad, and is so small that it is impossible for more than one small store to exist therein. It is further alleged that on January 17, 1921, the defendants leased the store building from Mrs. Sturtevant for the purpose of engaging in the mercantile business therein, which purpose was well known to her and her husband; and that, on said date,

for the consideration hereinafter expressed, C. C. Sturtevant sold and delivered to the defendants the said postoffice fixtures and covenanted that the postoffice should remain within the said store building, unless the same should be removed by order of the United States government; and that Mrs. Sturtevant sold and delivered to the defendants the said stock of merchandise, business and goodwill of the business, and that each of the Sturtevants covenanted and agreed not to engage in the mercantile business, nor to assist anyone else therein, at Crow, Oregon, so long as the defendants, or their assignees, should be engaged in the mercantile business in said place; and that the Sturtevants put the defendants into possession of said store building, postoffice fixtures and stock of merchandise and the defendants immediately began to engage in the mercantile business and have been so engaged ever since and purpose to continue in said business. It is further alleged that on January 17, 1921, in consideration of the sale and delivery to them of said postoffice fixtures and the agreement of the plaintiff not to remove the postoffice from the store building, and the sale and delivery to them of the stock of merchandise, business and goodwill of the business and the covenant and agreement of each of the Sturtevants not to engage in the mercantile business nor to assist anyone else therein at Crow, Oregon, so long as the defendants or their assignees should be engaged in said business at said place, the defendants were to begin, and did begin, to engage in the mercantile business at once, and defendants agreed to pay the Sturtevants the sum of $3,142.44, of which the sum of $1,000 was paid at that time and a note for $2,142.44 was made and delivered.

It is then further alleged that defendants agreed to pay for such stock of merchandise and postoffice fixtures the price that the Sturtevants had paid therefor at wholesale prices and that the Sturtevants represented, in order to induce defendants to make the purchase, that the wholesale price paid by them therefor was the sum of $3,142.44 and that the average daily sales from the said store during the year of 1920 had been between $40 and $50. Defendants alleged that these representations were false and that the wholesale price of the goods and fixtures did not exceed the sum of $1,900 and that the daily sales had not exceeded the sum of $20 a day. The usual allegations of intent to defraud and reliance by the defendants were sufficiently pleaded. They asked damages on account of these false representations.

As a further defense defendants alleged that during the month of October, 1921, each of the Sturtevants violated the agreement not to engage in the mercantile business nor to assist anyone else therein at Crow, Oregon, in that they established another store at said place wherein they have sold and are selling merchandise to about one hundred of the defendants' customers, to the damage of the defendants in that, except for said violation, the defendants could have sold merchandise to the said customers at a profit of $1,600, and that the right of the defendants to engage in the mercantile business at said place and the value of said business is reasonably worth the sum of $2,000 less on the market on account of the fact that each of the Sturtevants has established and is operating the said store and engaging in the mercantile business and soliciting their former customers to purchase from them and for this defend-

ants allege that they are damaged in the sum of $3,600.

Defendants further set up a counterclaim, alleging the purchase and sale, as before, and the promise of the plaintiff not to engage in the same business and to allow the postoffice to remain in the building, and claim the same amount of damages as is alleged in the defensive answer before recited herein. The second counterclaim recites practically the same alleged violations of the agreement by the Sturtevants not to engage in business and the other violation that plaintiff has removed the postoffice into another building and claims damages of $3,600 on this account.

These defenses were all denied by the plaintiff, except he admitted the establishment of a new store in the month of October, 1921, setting up affirmatively, further, that this was done subsequently to June 1st, the date of the commencement of the action on the promissory note. The various defenses being put in issue by appropriate denials, the case went to trial. The jury, by a special verdict, found adversely to the plaintiffs upon certain special interrogatories: (1) Did the plaintiff and his wife agree not to operate another store at Crow, Oregon, so long as the defendants should be in business there? (2) Did the plaintiff agree not to remove the postoffice without the order of the United States government? The jury answered "Yes," and allowed the defendants $300 damages, which, deducted from the amount of the note, with interest, left a balance of $1,855.07, for which the jury returned a verdict, together with $150 attorney's fees. The jury found adversely to the defendants as to the charge of misrepresentation of the value of the stock of goods. There was a judgment for the plaintiff and defendants appeal.

AFFIRMED.

For appellants there was a brief and oral argument by *Mr. H. E. Slattery.*

For respondent there was a brief and oral argument by *Mr. F. E. Smith.*

McBRIDE, C. J.—1. It will be observed that the action upon the note was begun June 1, 1921, and the alleged breach of the agreement mentioned did not occur until October 13, 1921. We are clear that these counterclaims for alleged breach of the contract not to engage in business were not proper and have no place in this case. We do not find any precedent for allowing a counterclaim upon a cause of action which had not matured at the time of the commencement of plaintiff's action, and such seems to be the condition of the authorities: 1 Sutherland's Pleading, Practice and Forms, § 628, p. 374; *Gannon* v. *Dougherty,* 41 Cal. 661; *McGuire* v. *Lamb,* 2 Idaho, 378 (17 Pac. 749); *McGuire* v. *Edsall,* 14 Mont. 359 (36 Pac. 453), and the many cases there cited.

We have not cited the New York cases because the statute there expressly excludes counterclaiming of unmatured causes of action, but the statutes of California, Idaho and Montana are similar to ours in this respect. An apparent exception to the rule, but which exception is only apparent when the reason of it is understood, arose where a wrongful attachment was sued out at the commencement of the action. Such cases are *Reed* v. *Chubb Brothers, Barrows & Co.,* 9 Iowa, 178; *Rumsey & Co.* v. *Robinson & Atherton,* 58 Iowa, 225 (12 N. W. 243), and *Waugenheim* v. *Graham,* 39 Cal. 169. All these cases arose under statutes permitting cross-complaints similar to our counterclaim, sometimes more liberal and, in other instances, sometimes more narrow; but the underly-

ing principle in all these cases is that the wrongful attachment was instituted coincidentally with the commencement of the action and so, by reason of such wrongful attachment, a cause of action accrued to the defendant at the time of the commencement of plaintiff's action. We find no other cases sustaining defendants' theory than these and, as is shown, they are distinguished from this case.

While "counterclaim" includes both setoff and recoupment, it is a more comprehensive term than either in that it permits the defendant to recover against the plaintiff any balance which may have existed in his favor at the time of the commencement of plaintiff's action, which was not the case with a defense pleaded by way of setoff or recoupment before the statute of counterclaim in equity. Other than the difference above mentioned there seems to be no logical distinction, and the defendant was never permitted to set off or recoup for a cause of action which had not accrued in his favor when the plaintiff's action was commenced. The only defense which the defendants had when plaintiff began this action was that of fraudulent misrepresentation as to the value of the stock and goodwill and as to the amount of the daily sales made as to each of which the jury found in favor of the plaintiff under unquestionably proper instructions by the court upon that subject. In other words, the jury found that there was no legitimate defense to this action when it was begun.

It was never the policy or intent of the law to permit a defendant, who at the time suit was brought actually owed the debt, to prolong litigation for several months and then lug in alleged defenses which had not accrued when the action was commenced against him. This being true, it was not error for

the court to exclude the testimony of a supposed expert as to the value of the goodwill and the stock of goods affected by an alleged breach of contract occurring several months after plaintiff's action was commenced. The only error that was committed was in submitting that question to the jury at all. All evidence on that subject should have been excluded and had there been an appeal by the plaintiff on account of the court submitting this question to the jury we should have been compelled to reverse the case in his favor. As it is, he has not appealed and the abatement sought by the defendants must be allowed to stand, but, instead of being injured in the premises, defendants have received an undue credit of $300.

This view of the case renders it unnecessary to consider the other questions arising on the rejection of evidence on the other causes of action and the judgment will be affirmed.          AFFIRMED.

HARRIS and McCOURT, JJ., concur.

BURNETT, J., took no part in the decision of this case.

---

Reversed and remanded on petition for rehearing January 22, 1924.

ON PETITION FOR REHEARING.

(222 Pac. 294.)

REVERSED. REHEARING DENIED.

Mr. H. E. Slattery for the petition.

Mr. F. E. Smith, contra.

McBRIDE, C. J.—This is a petition for rehearing, in which the correctness of the opinion published in 219 Pac. 802, is challenged.

2. We there held that in cases of this character, in order that a counterclaim could be pleaded under Section 74, Or. L., it should be one existing at the time of the commencement of the action. The opinion was rendered by the writer of this opinion and, the case not being thoroughly briefed, it was there held that, in order to constitute a valid counterclaim, the cause of action arising under the counterclaim should have existed at the time of the commencement of the action. Upon a petition for a rehearing the case has been thoroughly briefed and carefully examined, and the writer now finds that the cases there cited by him in support of his opinion were cases arising under subdivision 2 of Section 74, and were not applicable to cases arising under subdivision 1, and that he was wrong.

The great weight of authority under statutes similar to ours is to the contrary: 23 Standard Ency. Procedure, 707; *Slaughter* v. *Machine Co.*, 148 N. C. 471 (62 S. E. 599); *Caspary* v. *Hatch,* 157 App. Div. 679 (142 N. Y. Supp. 785); *Howard* v. *Johnson,* 82 N. Y. 271; *Californian Canneries Co.* v. *Pacific S. Metal Works,* 164 Fed. 978 (91 C. C. A. 106); *Smith & Bro.* v. *French,* 141 N. C. 1 (53 S. E. 435). Therefore we are constrained to hold that the alleged counterclaim was properly pleaded and should have been considered by the court, as, in fact, it was.

3. The only error that we find was the refusal of the court to allow the testimony of the defendant Moyer to the effect that he knew the value of the goodwill of the business, and to testify to such value. It is very difficult to approximate the value of goodwill, and while we are still of the opinion that the conditions being shown,—the situation of the prem-

ises, the amount of patronage, and the general conditions existing at the time,—are stronger evidence than the opinion of a so-called interested expert, yet the authorities seem to be generally to the effect that such testimony is admissible for what it is worth: *White* v. *Jones*, 79 App. Div. 373 (79 N. Y. Supp. 583, 587); *In re Randell's Estate*, 8 N. Y. Supp. 652, 657; *Mueller's Estate*, 190 Pa. St. 601, 602 (42 Atl. 1021).

4. While the refusal of such testimony in the particular case, and especially from a person who did not seem to have been able to so conduct the business, even while he had all the benefits of the goodwill transferred to him by his grantors, as to be able to do anything toward the payment of the property he had purchased, yet it was technically admissible and might have had some effect upon the jury in increasing to some extent the deductions which the jury allowed the defendants. But that was a question for the jury, and not for the Circuit Court or this court.

It may be added that the data for estimating the value of the goodwill of a business are always more or less uncertain. It depends very much upon the personality of the parties engaged in the business. One man by his personality, his adroitness in conducting his business, his geniality in attracting customers, and his wide acquaintance with his customers, may be capable of doing a profitable business where another, lacking some or all of these qualities, may fail, or at least not succeed to the extent his predecessor had attained. Of course, the fact that the business had been long established, and the habit of customers who have been used to dealing at a particular place to continue to go there, and the fact that there may be some other attraction, such as the location of the postoffice in the same building, were elements not

to be overlooked; but, after all, it is a question for the jury, taking all the circumstances, including the testimony of persons familiar therewith, into consideration. But we are not justified in saying that the testimony of the defendant Moyer, who had been connected with the business some time, was not of some value, even if small, and for these reasons our former opinion in this case is set aside and the case remanded to the Circuit Court for a new trial.

REVERSED AND REMANDED. REHEARING DENIED.

Mr. Justice HARRIS having resigned and Mr. Justice COSHOW having been appointed since this case was submitted, neither took part in this decision.