## PERDUE v. HUGHES.
### No. 11137.

Court of Civil Appeals of Texas. Galveston.
Aug. 1, 1940.

Rehearing Denied Oct. 10, 1940.

Joe Bailey Humphreys and Kennedy & Granberry, all of Crockett, for appellant.

Adams & Morgan, of Crockett, for appellee.

MONTEITH, Chief Justice.

This is an action brought by appellant, B. O. Perdue, against appellee, Dr. D. E. Hughes, for injunction to restrain appellee from practicing optometry in Houston County for a period of two years from the termination of a certain contract entered into between the parties.

Appellant's suit was based upon a written contract, wherein appellant agreed to furnish appellee optometrical equipment, heat, lights, water, and telephone service, in consideration of which appellee agreed to pay appellant 20% of his gross receipts and that upon the termination of said agreement he would not practice or engage in his profession in Houston County for a period of two years from and after the termination of said contract. Appellant sought an injunction restraining appellee from the practice of optometry under the terms of said contract. On a hearing before the court without a jury the injunction sought by appellant was refused. Appellant appeals from this order.

Appellant was and is the proprietor of a jewelry store in the town of Crockett in Houston County, Texas. He was not licensed to practice optometry but maintained an optometrical department in his place of business. Dr. D. E. Hughes was a licensed optometrist. By written contract appellant leased to appellee a portion of his establishment with a complete set of optometrical equipment, and agreed to furnish to appellee the store space, equipment, and utilities necessary for the practice of his profession. The record shows that appellee bought and paid for the merchandise used in the practice of his profession and that he had complete charge thereof, and that appellant had no control or supervision thereof, but merely leased said space and equipment to appellee. The contract was terminated on June 3, 1940. Subsequent thereto appellee moved to other quarters in Crockett, Texas, and began the practice of his profession. This action was brought by appellant to enjoin appellee from practicing optometry in Houston County within two years from the termination of the contract.

The trial court made the following findings of fact and conclusions of law:

"1. I find that plaintiff has, for a number of years, conducted a jewelry store in the town of Crockett, in Houston County, Texas; that he is the owner of optometrical equipment, and for a number of years he has furnished such equipment, together with office space in his jewelry store, as well as lights, telephone, heat, water, etc., to various parties who were licensed to practice optometry, and receive compensation for the above items furnished by him a percentage of the gross receipts of such optometrist so occupying such space and using such equipment. Through this method, there had been maintained in plaintiff's jewelry store service in optometry for sev-

eral years; that plaintiff was not licensed to practice optometry in Texas.

"2. I find that defendant was duly licensed by the State to practice optometry in the State of Texas, at the times hereinafter mentioned.

"3. That on the 1st day of February, A. D. 1938, plaintiff and defendant entered into the following agreement:

"This trade agreement, made this 1st day of February, A. D. 1938, by and between B. O. Perdue, herein known as first party, and Dr. D. E. Hughes, known herein as Second Party,

"Witnesseth, that the said First Party agrees to furnish the Second Party the use of the former's optometrical equipment, location in rear of store of Perdue Jewelry Company, lights, heat, water and telephone for local service.

"Second Party recognizes the advantages of practicing the profession of Optometry in the same location with First Party and further recognizes the extensive good will already established by B. O. Perdue, and the Perdue Jewelry Company; appreciation of the items of lights, heat, telephone, water and other conveniences to be enjoyed by my locating with First Party, hereby confessed and acknowledged, I, Dr. D. E. Hughes, covenant, warrant, contract and agree that as a special inducement to Mr. Perdue to associate me with his business that upon the termination of this trade agreement I will not practice or engage in my profession of Optometry, directly or indirectly, in Houston County for a period of two years from the termination hereof.

"Second Party agrees to pay unto Second Party at the close of each business day, twenty per cent (20%) of my gross receipts for the day.

"Second Party covenants that he will conduct the business and practice the profession of Optometry during the existence of this contract with skill and the highest professional ethics will be employed.

"First Party agrees to receive Second Party's patients with courtesy and exert reasonable efforts to retain their patronage.

"It is expressly understood that this agreement, except the above covenant not to engage in practice in Houston County, may be terminated by either party at any time without assignment of reason therefor.

"In testimony whereof, the parties to this agreement execute their signatures in duplicate, the day and year above written.

"B. O. Perdue, First Party

"D. E. Hughes, Second Party.

"That after the execution of the above agreement, plaintiff furnished the equipment, etc., to defendant, in accordance with the terms of the agreement, and defendant entered upon the practice of his profession, using a portion of the building occupied by plaintiff's jewelry store, and the equipment, etc., furnished him by plaintiff, from the date of the contract until June 3, 1940, when plaintiff terminated said contract following a dispute between the two.

"4. The Court finds that immediately after the contract was terminated, defendant began the practice of optometry at another place, in the town of Crockett, in Houston County, Texas, and continued to practice his said profession until June ——, 1940, when he was temporarily restrained from further practice of optometry in Houston County, Texas, upon the sworn petition of plaintiff.

"5. That upon motion by defendant to dissolve the temporary restraining order, the same was dissolved on July 6, 1940, after hearing evidence from both sides.

"Conclusions of Law.

"1. The Court concludes that the portion of the contract above set out, as follows:

"I, Dr. D. E. Hughes, covenant, warrant, contract and agree that as a special inducement to Mr. Perdue to associate me with his business that upon the termination of this trade agreement I will not practice or engage in my profession of Optometry, directly or indirectly, in Houston County, for a period of two years from the termination hereof, has the effect of placing defendant's license at the disposal of plaintiff, who was not licensed to practice optometry in the State of Texas, which act is prohibited by law, and therefore cannot be enforced. Judgment was accordingly rendered, dissolving the temporary restraining order, and refusing the relief prayed for by plaintiff.

"Sam Holland, Judge Presiding."

The controlling question presented in this appeal is the validity of the contract between the parties. It involves the construction of the optometry act known as Title 71, Revised Civil Statutes, including

Art. 4566—1, which is Section 16 of House Bill 410, Acts 1939, c. 4, p. 368.

It also contemplates a review of the trial court's conclusions of law wherein he held that the provision of said contract wherein appellee agreed that on the termination of said agreement he would not practice or engage in his profession of optometrist in Houston County for a period of two years from the termination thereof has the effect of placing appellee's license at the disposal of appellant.

It is the contention of appellee that he could have entered into a contract with and sold his business and good will to another licensed optometrist and that he would have been bound thereby, but that under the optometry act he can not sell his good will to a layman, because such a contract would be against public policy and in restraint of trade and would place a restriction upon a license permitting him to practice his profession in Texas.

We have been cited to no cases of parallel facts decided by the courts of this state, and have found none, but we think that the question involved herein may be determined upon established principles of law.

We cannot agree with appellee that this agreement, which is based upon a sufficient consideration, not to practice optometry in Houston County for a period of two years after the termination of said contract was in restraint of trade, or against public policy, nor can we agree with the trial court in his conclusion that said contract had the effect of placing appellee's license at the disposal of appellant.

It is undisputed that appellant did not hold himself out as an optometrist; that he made no attempt to practice that profession; and the record shows that appellee's patients were his own and not those of appellant.

The exact question presented in this appeal, with the exception of the fact that both parties to said action were practicing physicians, has been decided in the case of Randolph v. Graham, Tex.Civ.App., 254 S. W. 402, in which writ of error was denied by the Supreme Court. This was a suit to enforce by injunction a contract not to practice medicine in a prescribed territory for a specified period of time. The court in its opinion says:

"It is not apparent why it is unlawful for a physician, if he can get any one to purchase his property and his good will, to do so, just as a merchant may do the same thing, and bind the seller not to further engage in the same business within a certain distance or radius.

"We see no reason whatever to broadly hold such a contract void. It is a property right, personal in its nature, and should be left to the liberty and freedom of contract. There is no such public policy involved in it as would require the physician to keep his good will for his own interest or restrain him from abandoning his practice and selling out his estate and good will together. Such a sale is contractual and thereby lawful. That such a sale is valid and enforceable we need look no further than to the case of Wolff v. Hirschfeld, 23 Tex.Civ.App. 670, 57 S.W. 572. * * *

"We find no difficulty in agreeing with the trial court that a distance of the 20-mile radius is not unreasonable or greater than was necessary to protect appellee if he needed such protection, in the pursuit of his business or profession * * *.

"It does not occur to us to say that, in so far as the public is concerned, it will not be hurt by such an agreement, nor likely to be, since every other physician or surgeon of equal competency is at liberty to practice the same profession within the same limited territory. Glover v. Shirley, 169 Mo.App. 637, 155 S.W. 878. * * *

"No authority is cited to sustain the contention that such an agreement [on the part of a physician] never to practice his profession again in any given territory, or at all, is wholly void. * * *

"If one has the right to make a contract binding himself not to practice his profession for a great number of years, in a large or limited area, why not be allowed to make the same contract permanent, or at least during the life of the purchaser? What interest has the public in a professional man, that would deny to him such liberty of contract?"

The above holding is followed by this court in the case of Latham v. Butler, Tex. Civ.App., 17 S.W.2d 1083, in an opinion by former Chief Justice Pleasants, in which a writ of error was also refused.

The practice of optometry has been regulated in this state for a number of years. The act regulating the practice was amended by Art. 4563, Vernon's Annotated Tex-

as Statutes. This act provides that the Texas State Board of Examiners may, in its discretion, refuse to issue a license to any applicant and may cancel or suspend the operation of any license by it granted for the following reasons:

"(g) That said licensee directly or indirectly aids or abets in the practice of optometry any person not duly licensed to practice under this act; * * *

"(i) That said licensee lends, leases, rents or in any other manner places his license at the disposal or in the service of any person not licensed to practice optometry in this State."

Art. 4566—1, Vernon's Annotated Texas Statutes, which was enacted in 1939, reads: "Provided that it shall not be construed as a violation of this Act for an optometrist to lease space for an establishment on a percentage or gross receipts basis or to sell, transfer or assign accounts receivable."

The record shows that appellant had maintained an optometrical department in his establishment for many years, and that he had furnished to an optometrist a room, equipment, and utilities, and that the optometrist had paid therefor a percentage of his gross receipts. Appellant by this arrangement profited by having patients of the optometrist come to his establishment who frequently purchased articles of merchandise from him, and the optometrist profited by said arrangement by not being compelled to invest his capital in equipment. To prevent the loss of his customers, appellant required appellee to agree that he would not practice optometry in Houston County for two years after their relationship was terminated.

The trial court found that this arrangement placed the license of appellee at the disposal of appellant for a period of two years following the dissolution of their agreement.

From a careful analysis of the above sections of the statutes regulating the practice of optometry, we think that it was the obvious intention of the Legislature, at the time of the passing of the acts above referred to, to make an arrangement such as the one under consideration, legal and that the three above quoted sections can be reconciled, particularly where it was the obvious intention of the parties, for the lessor to merely lease space in his establishment to the optometrist on a percentage or gross receipt basis, and not to, in any sense, prac-

tice the profession of optometry as in the instant case.

For the above reasons, the judgment of the trial court in refusing and denying appellant injunctive relief will be reversed and the cause remanded, with instructions to the trial court that appellant be granted the temporary injunction prayed for.

Reversed and remanded with instructions.