214 P.2d 874

**RYSKA et al. v. ANDERSON et ux.**

No. 7545.

Supreme Court of Idaho.

Feb. 8, 1950.

Rehearing Denied March 6, 1950.

Anderson & Thomas, Boise, Samuel Kaufman, Jr., Boise, Charles F. Reddoch, Boise, Paul B. Ennis, Boise, for appellants.

William F. Galloway, Boise, for respondents.

GIVENS, Justice.

Appellant Elmer W. Anderson, experienced in merchandising hardware since 1918, and furniture, appliances and ranges since 1920, operated the Eagle Mercantile Company in Eagle, an established business, from February 8 to August 8, 1945, when he and his wife conveyed it to respondents, formerly farmers, by written bill of sale as follows: "* * * that certain stock of goods, wares and merchandise consisting principally of groceries, hardware, dry goods and supplies; also all the furniture, fixtures, equipment used in the operation of said business and thereto belonging and all more particularly described in the inventory of said furniture, fixtures and equipment attached to the Bill of Sale, which inventory by reference is incorporated herein as fully as though set out herein in full; also the lease hold rights of the Vendors covering the buildings and grounds used in connection therewith; Also their right title and interest in that certain water and water works now used jointly by the Vendors and others associated with them in the use thereof; together with the good will of the Vendors in connection of said business, and including all licenses or permits, if any, and all other rights and privileges used in connection with the operation of said business; And the Vendors in consideration of the payments hereinbefore made, covenant that they, nor any agent for or on their behalf, will directly or indirectly engage in or operate any business in competition with the Vendees herein in the Village of Eagle for a period of Five Years from the date hereof."

January 1946, appellants began operating the Anderson Appliance Store across the street from the Eagle Mercantile Company. Thereafter, respondents resold the Eagle Mercantile Company at a claimed loss.

In the fall of 1948, respondents sued appellants for damages for violation of the refraining covenant in two causes of action in the amended complaint: the first cause for $2,500 damage to good will, and $10,000 loss of profits; the second for $15,000 for interference with and prevention of securing certain lines of merchandise and appliances. Verdict was rendered for $10,000 on the first cause and $5,000 for the second.

The appeal from the consequent judgment and order denying a motion for new trial is apparently now being carried on by appellants and their trustee in bankruptcy.

Appellants urge Instructions Nos. 1, 5, 6 and 7 were erroneous, as not confining the jury's consideration to what was sold by the Eagle Mercantile Company prior to August 8, 1945, contending that prior to August 8, 1945, no appliances were sold by the Eagle Mercantile Company and appel-

lants' obligation did not cover any merchandise not thus previously handled, and that such restrictive contracts are to be strictly construed against the covenantee.

■ The modern rule of construction is that such restrictive provisions, when combined with the sale of a business, if reasonably limited as to time and scope—and this one was—are to be given effect according to the intent of the parties and obligor must comply not only with the letter, but the spirit of the agreement, consistent with legal principles, and within the scope of the agreement so construed.

"* * * The construction of the covenant to which we adhere is fully justified by the fair and natural meaning of the language employed. Further, where the purpose of a covenant is to provide against competition, the parties should comply not only with the letter but with the spirit of their contract." [Citing cases.] Hessel v. Hill, Mo.App., 38 S.W.2d 490 at page 493; Siegel v. Marcus, 18 N.D. 214, 119 N.W. 358; 20 L.R.A.,N.S., 769 at page 774; Barrows v. McMurtry Mfg. Co., 54 Colo. 432, 131 P. 430; Moorman & Givens v. Parkerson, 131 La. 204, 59 So. 122, Ann.Cas. 1914A, 1150; Nelson v. Brassington, 64 Wash. 180, 116 P. 629, Ann.Cas. 1913A, 289; General Paint Corp. v. Seymour, 124 Cal.App. 611, 12 P.2d 990 at page 992; Jewel Tea Co. v. Watkins, 26 Colo.App., 494, 145 P. 719; Kunin v. Weller, 296 Pa. 161, 145 A. 719; Wilson v. Pigue, 151 Fla. 734, 10 So.2d 561; Perdue v. Hughes, Tex.

Civ.App., 143 S.W.2d 684; Pilgrim Coat, Apron & Linen Service Inc. v. Krzywulak, 141 N.J.Eq. 212, 56 A.2d 584.

Appellant transferred all "licenses or permits" and "all other rights and privileges used in connection with the operation of said business" and the only items thereby contemplated, disclosed by the evidence and the construction placed on the contract by both parties thereto by their actions, were appliances and kindred articles, and appellants promised to assist respondents in securing such rights and privileges and to introduce them to dealers therein, and did introduce respondents to some such dealers. Whether these rights or privileges be denominated franchises or what not, appellants immediately violated the contract by securing most of such available rights and merchandise for themselves and selling to their old and new customers.

There is evidence, in part from appellants' own records, though conflicting, that the Eagle Mercantile Company had dealt in appliances prior to August 8 and appellants admitted competition in goods concededly handled prior to August 8 and as specified in the contract.

■ Therefore, Instruction No. 1 was unquestionably correct as an analysis and statement of the pleadings in a preliminary exposition to the jury of the essential issues. Conceding the obligation only encompassed merchandise handled prior to August 8, this instruction considered with Instruction

No. 5 was not incorrect. Appellants requested no amplifying, clarifying, detailed or further instruction, or instruction of any kind on this feature—hence there is no reversible error. Boomer v. Isley, 49 Idaho 666 at page 675, 290 p. 405; Owen v. Taylor, 62 Idaho 408 at page 415, 114 P.2d 258; Klam v. Koppel, 63 Idaho 171 at page 184, 118 P.2d 729; Hall v. Boise Payette Lbr. Co., 63 Idaho 686 at page 694, 125 P.2d 311; Abbs v. Redmond, 64 Idaho 369 at page 375, 132 P.2d 1044; Dawson v. Salt Lake Hdw. Co., 64 Idaho 666 at page 674, 136 P.2d 733; Pittman v. Sather, 68 Idaho 29 at page 36, 188 P.2d 600.

■ Appellants contend Instruction No. 2 was erroneous as thereunder there was possible a double recovery for one element of damage; i. e. $2,500 for both good-will and $2500 loss of profit and $10,000 loss of sales; and also that Paragraph IV of the amended complaint meant that $10,000 worth of sales was lost and argue the recovery on the first cause of $10,000, if $2,500 be for loss of good-will, must have assumed a profit of 75% on $10,000 sales to make $7,500, asserted a patent absurdity. The very construction contended for proves its falsity, because the paragraph does not allege $10,000 sales, but $10,000 loss on account of loss of sales generally. The claimed construction is strained and out of keeping and not in accord with the context. The paragraph is to be given a reasonable construction, Fox v. Cosgriff, 64 Idaho 448 at page 453(1-2), 133 P.2d 930, and part of Instruction No. 2 correctly construed it. The last paragraph in the Instruction removed any uncertainty as to there being two amounts of $2,500 and confined the first cause to that alleged: i. e., $2,500 and $10,000 or only a total of $12,500.

■ Contrary to appellants' argument that because respondents sold all the goods they had, there was no interference, the evidence shows interference by depriving respondents of both customers, and goods to sell. There is ample evidence that appellants by violating their contract, deprived respondents of the opportunity to try and obtain more goods and customers, which overcomes the criticism of Instruction No. 8. Because many articles were scarce and hard to get and quotas limited but emphasized the baneful effect of appellants' rivalry.

■ Appellants are correct in stating that damages may be awarded only for their breach, and if respondents couldn't have secured appliances and appliance franchises or quotas, regardless of appellants setting up a competing business, no recovery is sustainable against appellants. The court's instructions presented such issue.

Appellants assert the evidence conclusively shows respondents could have secured no more appliances, regardless of appellants going into business. True, certain representatives of appliance dealers testi-

fied a grocery store was not a good outlet and respondents were not afforded such lines.

There were other factors as recognized by appellants which entered into the problem; condition of the markets due to the war, quotas and franchise rights, and a variable for which appellants alone were responsible; i. e., their going into business, all for consideration by the jury in passing upon the credibility of these representatives in view of their evident business associations with and regard for appellants. Appellants were in business, so the hypothesis of what would have ensued, as to respondents getting any of these lines, if appellants had not been in business, was problematical and the state of the evidence is such that the jury was justified in concluding as they did.

Appellants urge there is not a sufficient showing of the amount of damage. There must, of course, be a reasonable showing of loss, but the courts recognize the difficulty of ascertaining the exact extent of interference and amount of consequent damage.

"While the measure of damages for impairment of good-will is not the profits which a defendant realized in violation of his agreement the profit made by defendant may be considered, in evidence, if shown to correspond in whole, or in part, with the loss of plaintiff. 12 R.C.L. 996. The gains of appellants coincide with the loss sustained by respondent during the period appellants breached the restrictive covenant of their contract with respondent in the matter of competition. Those gains may be considered in awarding damages."

\* \* \* \* \* \*

"The correct rule is stated in Gregory v. Spieker, [110 Cal. 150, 42 P. 576, 52 Am. St.Rep. 70], supra, as follows: 'In cases like the present the damages are rarely susceptible of accurate proof, but the measure, expressed generally, is the value of the business lost to plaintiff, not the gain of defendant, which may be more or less than plaintiff's loss, though such gain may be considered in evidence. It should be shown to correspond, in whole or in part, with the loss of plaintiff.' [Citing cases.]

"It is unnecessary to analyze all of the authorities cited by counsel for respondent and counsel for appellants. The trial court did not adopt as the standard of measurement either the amount lost during the thirteen months' period in question by respondent or the amount of the income of appellants during that period of their unfair competition with respondent. All of those figures were taken into consideration by the court and the rule followed by the trial court is consonant with the principle in Loutzenhiser v. Peck, 89 Wash. 435, 154 P. 814; Nelson v. Brassington, 64 Wash. 180, 116 P. 629, Ann.Cas. 1913A, 289; 12 R.C.L. 996; Salinger v. Salinger, 69 N.H. 589, 45 A. 558.

"In Salinger v. Salinger, supra, the plaintiffs brought an action to recover for loss of profits because defendant, from whom they purchased a business, engaged in the same business in competition with the plaintiffs in violation of the agreement not to engage therein for a period of five years after the sale. It was held that the plaintiffs were not entitled to recover for loss of profits after the expiration of such period, but that evidence of such loss was admissible to show the reduced value of the good-will of the business at the end thereof for which plaintiffs were entitled to recover." Merager v. Turnbull, 2 Wash.2d 711, 99 P.2d 434, 439, 127 A.L.R. 1142 at page 1149-50.

General Paint Corp. v. Seymour (Cal.), supra.

■ The court gave appellants' Requested Instruction No. 2: "The court instructs the jury that the measure of damages in an action of this kind is such as proximately results from the defendants breach of their agreement, if any. It is not the defendants gain, but the plaintiffs loss, if any, to which they are entitled. This should be determined from all the facts and circumstances in evidence, and unless you find that they were actually damaged by loss of good will, or that their sales were lessened or property depreciated in value by the acts of the defendants, then there can be no recovery on behalf of the plaintiffs."

The books of both parties were in evidence, and while far from models either as to system or substance, with the respective auditing and analyses of both parties, were with all invoices before the jury. They showed sales, costs of merchandise and expenses of operation, with inaccuracies and omissions, volume, mark-up, profit, and loss, and there was evidence as to how much additional business could have been handled by respondents and their force of employees and what additional help would have been necessary if appliances had been handled.

Appellants' own invoices showed miscellaneous sales of $11,269.50 in 1946 and $14,112.46 in 1947, at an estimated profit of 56% or $14,223.90; and special lines in 1946 of $10,544.86 and in 1947, $19,715.08 at an estimated profit of 59% or $17,853.36. Total profit for the two years was $32,077.26. Appellants' Ex. C by their auditor Alsop, discloses respondents' compiled sales and expenses for the years 1945, 1946 and 1947, were respectively:

■ There was evidence to satisfy the requirements as uniformly expressed.

"It is true that it is impossible to determine from this testimony what the exact amount of plaintiffs' profits would have been had the appellants continued to board their men with them, but the fact that the damages in cases of this character cannot be ascertained with exactness is not a valid objection to their allowance. [Cases.]

"In considering a similar question, the Supreme Court of Indiana, in the case of

City of Terre Haute v. Hudnut, supra, [112 Ind. 542, 13 N.E. 686], quoted as follows from the case of Chapman v. Kirby, 49 Ill. 211:

" 'The court there said: "And of what does this loss consist but the profits that would have been made had the act not been performed by the appellants? And to measure such damages the jury must have some basis for an estimate; and what more reasonable than to take the profits for a reasonable period next preceding the time when the injury was inflicted, leaving it for the other party to show that, by depression in trade or other causes, they would have been less. Nor can we expect that, in actions of this character, the precise extent of the damages can be shown by demonstration. But by this means they can be ascertained with a reasonable degree of certainty." ' [Cases.]

"The evidence offered by the plaintiffs as to the amount of their profits for July and August, 1931, furnished a basis from which the jury could determine with reasonable accuracy what profits the plaintiffs would have made had the appellants continued to comply with the contract. This is all that is required in cases of this character, and we conclude that the evidence is sufficient to support the verdict as to the plaintiffs' first cause of action." DeWiner v. Nelson, 54 Idaho 560 at page 566-567, 33 P.2d 356, 358.

| | 1945 | | 1946 | 1947 |
|---|---|---|---|---|
| Sales | $20,090.66 | | $62,093.25 | $55,295.01 |
| Expenses | 22,674.17 | | 61,638.17 | 54,491.22 |
| Loss | $ 2,583.51 | Profit | $ 455.08 | $ 803.79 |

Harrington v. Hadden, 69 Idaho 22, 202 P.2d 236 at page 239; Hedrick v. Perry, 10 Cir., 102 F.2d 802 at page 802, 807; 127 A.L.R. 1152 et seq.; Sturtevant v. Dowson, 110 Or. 155, 219 P. 222 P. 294. The evidence justified the verdict on both causes of action.

These observations are particularly pertinent and apt:

"It may not be amiss to here suggest that there can be no sound and wholesome public policy, which operates in the slightest degree to lend approval to the open disregard and violation of personal contracts entered into in good faith, upon good consideration. It is quite as important, as a matter of public interest and welfare, that individuals be not allowed, with impunity, to transgress their solemn undertakings, advisedly entered upon, as it is that the public have protection in other respects. Where one is so lost to a sense of moral obligation as to accept a full consideration for his stock in trade and good-will, upon express condition that he refrain from

again entering that business for a limited time, within a certain territory, and then immediately, having pocketed the fruits of the agreement, deliberately and willfully ignores the controlling condition thereof, courts should certainly not hunt for legal excuse to uphold him in such moral delinquency. On the contrary in the interests of the general public, and to discourage bad faith conduct of that sort, wherever, without violation of legal principles and public policy, it may be done, contracts like the one under discussion should be rigidly upheld and enforced. A recent expression of the English Court of Appeals on this subject, in Underwood v. Barber, 68 L.J.Ch. Div. 201, meets with our cordial approval, and is as follows: 'If there is one thing more than another which is essential to the trade and commerce of this country, it is the inviolability of contracts deliberately entered into; and to allow a person of mature age, and not imposed upon, to enter into a contract, to obtain the benefit of it, and then to repudiate it and the obligations which he has undertaken, is prima facie, at all events, contrary to the interests of any and every country.' To like effect are Casserleigh v. Wood, 14 Colo.App. 265, 59 P. 1024, and Swigert v. Tilden, [121 Iowa 650, 97 N.W. 82, 63 L.R.A. 608, 100 Am.St.Rep. 374], supra.

"The conclusions announced in this opinion have been reached by the court upon a full, careful and independent examination and consideration of the testimony brought up and the complete record in the case. Fortunately, however, it appears that the honorable trial judge, who met the witnesses face to face, heard them under oath, observed their demeanor on the stand, marked any and all conflict of testimony, made full and explicit findings, all amply supported by evidence, although it may well be that on some points there was conflicting testimony, in harmony with the views we sustain. The result and effect of those findings were to establish: First. That plaintiffs below had no intention or purpose of obtaining a monopoly and obtained none; Second. That the restrictive clause of which complaint is made was reasonable and necessary to the fair protection of the plaintiffs in the enjoyment of the business and good-will purchased by them, and was in no sense contrary to public policy; Third. That the defendant executed the agreement freely, and received a good and adequate consideration therefor; and Fourth. That the plaintiffs have never at any time waived any right under the restrictive clause of the agreement, the terms of which the defendant had violated and was continuing to violate." Barrows v. McMurtry Mfg. Co. (Colo.), supra [54 Colo. 432, 131 P. 436].

"Appellee voluntarily entered into this mutual contract situation which he now seeks to undo. The situation in which the parties find themselves is of their own choosing. * * *" Orkin Exterminating Co. of Arkansas v. Murrell, 212 Ark., 449, 206 S.W.2d 185 at page 190.

No reversible error appearing, the judgment is affirmed. Costs to respondents.

HOLDEN, C. J., and PORTER, TAYLOR and KEETON, JJ., concur.