670 P.2d 59

**Barry DUNN, Plaintiff-Appellant,**

v.

**Duane D. WARD and Marilyn S. Ward, husband and wife, Defendants-Respondents.**

No. 14182.

Court of Appeals of Idaho.

Sept. 20, 1983.

James H. Paulsen, Sandpoint, for plaintiff-appellant.

Gary A. Finney, Sandpoint, for defendants-respondents.

McFADDEN, Judge, Pro Tem.

The appellant, Barry Dunn, brought this action alleging that the respondent, Duane Ward, had breached a noncompetition covenant which was included in a contract executed in 1977 for the sale of Ward's wholesale wood stake business to Dunn. Following trial, the court entered judgment in favor of Ward on the basis that Dunn had failed to prove damages to a reasonable certainty.

On appeal, Dunn contends the trial court erred (a) in applying the wrong standard for determining damages; (b) in not awarding damages for diminution of "goodwill;" and (c) in not awarding punitive damages. In addition, the respondents Ward request an award of attorney fees for representation of this appeal. We affirm the judgment but do not allow attorney fees on appeal.

The contract for the sale of Ward's business to Dunn provided that Ward would refrain from selling "fence posts and grape posts or grape stakes" on the wholesale market for four years after the sale. However, the contract specifically allowed Ward to continue in the ornamental fencing business. Ward testified that he did sell some posts and stakes wholesale in each of the years 1977, 1978, 1979 and 1980. He did not, however, testify as to the number of pieces sold or the dollar amount of the "prohibited" items. For example, he stated he made sales totalling $5,934.70 to Colville Post & Pole, a wholesaler, in 1977. However he added that "a lot of that could have been [ornamental fencing] rails." Similarly, he sold $7,340.02 worth of materials to Timbercraft in 1978, admitting that a "majority" of the amount was for grape stakes or grape posts. He sold $956.57 to Timbercraft in 1979, but a "lot of that could have been rails." Likewise, he made sales to Timbercraft in 1980, which he thought would exceed $5,000. Based on this testimony the court found that Ward had sold posts or stakes in violation of the covenant not to compete. However, the judge held that because there was no breakdown between the sales of prohibited items and

those not prohibited by the contract, he could not ascertain how many of the prohibited items were sold.

Dunn attempted to supplement the evidence elicited from Ward. Dunn testified that the average price he received for grape stakes or grape posts in 1977–78 was seventy-five cents. He testified what his costs were to produce each post, calculating a profit of approximately 50%. However, Dunn's testimony was not shown to be based on any business records. He omitted some costs from his calculations, such as taxes and depreciation, although he indicated that these were substantial items. Dunn also attempted to show, through cross-examination of Ward, what Ward's profits generally had been, per post, when he had operated the business. Ward's testimony as to his own profits, while not specific, differed sharply with Dunn's figures.

The measure of damage for the breach of an anti-competition clause is the amount that the plaintiff lost by reason of the breach. The loss may include an amount for impairment of goodwill, as well as loss of profits. *Vancil v. Anderson,* 71 Idaho 95, 227 P.2d 74 (1951); *Jacob v. Miner,* 67 Ariz. 109, 191 P.2d 734 (1948). Thus, a plaintiff must prove that he was injured by the breach and show the amount of damage caused to him. The measure of damages is not the amount of profits made by the defendant, rather it is the amount of profit lost to the plaintiff because of the breach. *Vancil v. Anderson, supra; Ryska v. Anderson,* 70 Idaho 207, 214 P.2d 874 (1950). However, the profits which a defendant realized in violation of his agreement may be considered, in evidence, if shown to correspond, in whole or in part, with the loss of plaintiff. *Ryska, supra,* 70 Idaho at 213, 214 P.2d at 877. In addition, although lost profits are not always susceptible of mathematically accurate proof, they must be proven with reasonable certainty. In *Andersen & Nafziger v. G.T. Newcomb, Inc.,* 100 Idaho 175, 182–83, 595 P.2d 709, 716–17, the Idaho Supreme Court stated: "Damages need be proved only with a reasonable certainty and courts have deter-

mined this simply means that existence of damages must be taken out of the realm of speculation."

In this case the trial judge found that Dunn failed to prove the amount of his damages with reasonable certainty. First, he presented no evidence at all showing any loss of business, loss of customers or loss of profit to *his own business* attributable to Ward's breach. In addition, although Dunn presented some proof of Ward's profits, he failed to show any relation between those profits and Dunn's losses. Ward testified as to gross sales to particular customers, but failed to provide any figures to indicate how many prohibited items were sold in each group, or how much profit was included on a "per prohibited item" basis. Because of this lack of proof on the part of Dunn, we hold that the trial court was correct in entering judgment for Ward as to the claimed lost profits.

Dunn also contends that because of Ward's breach of the noncompetition clause he was damaged and should recover the $5,000 allegedly assigned as the value of the goodwill. As noted earlier, a party has the right to recover the value of the goodwill lost through another's breach of a noncompetition clause. It has been held that the best evidence of the value of goodwill "is the purchase price agreed upon in a voluntary arm's length transaction." *Baldwin v. Stuber,* 610 P.2d 160, 162 (Mont.1980); *Spheeris v. Spheeris,* 37 Wis.2d 497, 155 N.W.2d 130, 135 (1967).

Here the parties did not separately state the value of the goodwill in their contract although goodwill was specifically included in the transaction. Through his own testimony and the testimony of Ward, Dunn sought to establish that the parties had agreed to a value of $5,000 for the goodwill. However, that testimony fell short of establishing any agreement between the parties that the goodwill was valued at $5,000. The trial judge made no finding as to the value of the goodwill which Dunn had purchased. We conclude that this was not error because the evidence was conflicting and insufficient to establish the value.

Loss or impairment of goodwill can also be measured by the amount of profits lost to the buyer as a result of the breach. *Havre Daily News, Inc., v. Floren,* 163 Mont. 131, 515 P.2d 673 (1973); *Lieman-Scott, Inc., v. Holmes,* 142 Mont. 58, 381 P.2d 489 (1963); *Shields v. DeVries,* 70 Wash.2d 296, 422 P.2d 828 (1967). However, as noted already, Dunn failed to prove with sufficient certainty the loss of his profits. We conclude the trial court did not employ the wrong standard of proof required to establish the amount of Dunn's damages. Nor did the court err in denying damages to Dunn for impairment of goodwill although there had been a violation of the covenant not to compete.

Dunn also claims that the trial court erred in failing to award punitive damages. Although our Supreme Court previously has held that punitive damages may be awarded in contract actions, *Hatfield v. Max Rouse & Son Northwest,* 100 Idaho 840, 606 P.2d 944 (1980); *Linscott v. Rainier Nat. Life Ins. Co.,* 100 Idaho 854, 606 P.2d 958 (1980), that court has also noted that "punitive damages are reserved for the most unusual and compelling circumstances." *Hatfield, supra,* 100 Idaho at 851, 606 P.2d at 955. Punitive damages are not available in the ordinary breach of contract action. There must be present some element of outrage normally present in the commission of crimes or intentional torts, circumstances which are absent here. *See Hatfield, supra; Linscott, supra.* The issue of punitive damages was presented to the trial court, and that court failed to award such damages. Although the trial court made no findings on this issue, there is a presumption that findings, if made, would have been adverse to the appellant. *Smith v. Howard,* 76 Idaho 235, 280 P.2d 1060 (1955); *Williams v. Idaho Potato Starch Co.,* 73 Idaho 13, 245 P.2d 1045 (1952). Under the circumstances as presented the trial court did not err in this regard.

Respondents Ward seek an award of attorney fees on this appeal. However, based upon the record in this case, we conclude that an award of attorney fees on appeal is not appropriate. It was found on competent evidence that Ward had breached his covenant not to compete; and on appeal Dunn raised genuine issues concerning proof of damages. We are not left with an abiding belief that the appeal was brought frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979).

Judgment affirmed, costs to the respondents Ward.

WALTERS, C.J., and SWANSTROM, J., concur.