[No. 38179.   Department One.   January 19, 1967.]

ALBERT C. SHIELDS et al., Respondents, v. WILLIAM DEVRIES et al., Appellants.*

John L. O'Connor and Robert Atkinson, for appellants.

Jack Bennett, for respondents.

HILL, J.—This is an action for the conceded breach of a contract. The issue is whether any damages resulted from the breach.

William DeVries, Sr. had an automotive parts, supplies and accessories business in Spokane, operating under the name of the William DeVries Company. His son, William DeVries, Jr. had purchased an International truck (through his father; title to which remained in his father). This truck, DeVries, Jr. stocked with automotive parts, supplies and accessories purchased from his father, and proceeded to develop a number of customers along a route extending

*Reported in 422 P.2d 828.

through the Spokane Valley and, thence, through certain towns in Idaho and Montana. The truck had the name "William DeVries Company" painted on the sides.

The promise with which we are here concerned is contained in an agreement dated February 19, 1958, which sets out the terms and conditions under which William DeVries, Jr. sold his truck, the load of merchandise which it contained, and the "business and good will" connected with the route which he had developed to Albert C. Shields and his wife.

Shields had previously gone over the route with DeVries, Jr. and had been introduced to all the customers. The agreement contained the following provision:

> It is understood that the William DeVries Company and the seller herein will not sell goods to any operator of any William DeVries truck who is attempting to make any sales on the route set out above  .  .  .  .

(The William DeVries Company was then owned by William DeVries, Sr., and the contract, at the place for signatures, carried the words "APPROVED: William DeVries Co. By." and it was signed by William DeVries (the same person to whom we have referred as William DeVries, Sr.). The purchase price was $12,000, to be paid $35 or more each week. There was no down payment, no interest on deferred balances, and when $5,500 had been paid title to the truck was to be transferred to the buyers.

It was intended that the buyers would sell the merchandise then on the truck, but they were obligated to

> restock said truck with goods and merchandise of equivalent or greater value, thus always keeping on hand a stock of goods and merchandise equivalent in value

to that which had been received with the truck.

There was, however, no requirement that this merchandise be purchased from the William DeVries Company, and Mr. and Mrs. Shields were always at liberty to purchase parts, supplies and accessories where they pleased.

After the sale to Mr. and Mrs. Shields, William DeVries, Jr. had developed, in similar fashion, other routes; and he

had sold, by similar transactions, trucks, merchandise and routes to other buyers. These trucks had painted on them the same name "William DeVries Company."

By 1961, more than 3 years after the purchase from De-Vries, Jr., trucks bearing the name "William DeVries Company" began appearing from place to place and from time to time on certain portions of the route which Mr. and Mrs. Shields had purchased. In the interim the first $5,500 had been paid on the $12,000 purchase price; title to the truck had been transferred to Shields, and the name of DeVries had been removed from the truck and replaced with "Bert Shields Auto Supply."

Also in 1961, DeVries, Jr. had purchased the William DeVries Company from his father. As part payment, De-Vries, Jr. assigned his seller's interest in the contracts for trucks, merchandise and routes to his father (including the contract with Mr. and Mrs. Shields).

It is conceded that protests were made that DeVries Company trucks were coming onto portions of the route which had been sold to Mr. and Mrs. Shields, and that DeVries, Jr. had continued—despite his agreement "not to sell goods to any operator of any William DeVries truck who is attempting to make any sales on the route"—to sell to the individuals who were making sales, or attempting to do so, on the route sold to Mr. and Mrs. Shields.

The justification for the sale of merchandise to the "invaders" was that the promise made to the plaintiffs was completely illusory so far as being any check on the offenders. They, like Shields, were free to purchase parts, supplies and accessories from any jobbers they pleased and to go wherever they pleased in search of business. The fact that a person had purchased a particular route was in no sense a limitation to his right to seek business where it could be found. If DeVries refused to sell to such individuals, they could and would purchase their parts, supplies and accessories from somebody else.

Some time subsequent to 1961 and prior to the commencement of this action, Mr. and Mrs. Shields completed

their payments on the contract. They also quit making any purchases from the William DeVries Company. They commenced this action in August, 1964, against DeVries, Sr. and DeVries, Jr.

This is clearly not the usual action for the breach of a covenant not to compete. No injunction was sought. The first breach occurred some 3 years after the date of the agreement upon which this action is based; and, then, approximately another 3 years elapsed before the action was commenced.

At the trial there was no attempt to establish any specific loss of business attributable to the breach of the contract. The plaintiffs took the position that the truck was worth $5,500; the stock of goods on the truck was worth $2,500; hence, they had paid $4,000 for what was to be an exclusive[1] route and, not having had an exclusive route since 1961, they were entitled to the return of their $4,000.

The trial court accepted their theory, but not their figures—allowing $5,500 for the truck, $4,500 for the merchandise, and $2,000 for their business, good will and route.

---

[1]The word "exclusive," as used with reference to this route, is misleading. All parties to the agreement were familiar with the fact that the business of selling automotive supplies, parts and accessories was a highly competitive one. They knew that any jobber of such merchandise was at liberty to cover the same route and call on the same customers.

The agreement does not attempt to limit Mr. and Mrs. Shields as to where they should purchase or where they should sell their merchandise (except that they were not to solicit new customers within the Spokane area).

The situation was identical with relation to the other routes that DeVries, Jr. developed and sold. The purchasers of those routes had no limitation placed upon them as to where they would purchase and sell merchandise, though each had a route which DeVries, Jr. had developed.

As long as the buyers under these contracts made their required weekly payments, the seller had no control over them. In the event there was a "trespass" on the route sold to Mr. and Mrs. Shields, the sole restraint suggested in the agreement was a refusal to sell merchandise "to any operator of any William DeVries truck" who was attempting to make sales on the route described in the agreement. As we have indicated, all parties to the agreement knew that such merchandise could be purchased elsewhere at a competitive price.

The conclusion of law on which the trial court based its judgment for $2,000 was that the breach of contract

caused a total failure of consideration as to the item of property sold to the Plaintiffs . . . described as:
The business and good will connected with a route [then describing the route].

From this judgment the defendants appeal.

If we accept the theory of the plaintiffs, we are still unable to accept the trial court's conclusion that there was a total failure of consideration. For some 3 years there was no claim of interference on their "exclusive" route. The invasion of it did not occur until after they had removed the DeVries name and substituted their own on the truck. This would indicate that they no longer attached much value or good will to the DeVries name.

The invasion of their route, when it did begin in 1961, was partial only, and the Shields failed to name a single customer that they had lost in consequence thereof. Further, it is not the invasion of their route which is the basis of their cause of action. There is nothing in the agreement that guarantees the plaintiffs against an invasion by anyone. Indeed, it seems to have been contemplated that there might be such invasions, and the only protection offered in such a case was the promise heretofore quoted, *i.e.*,

It is understood that the William DeVries Company and the seller herein will not sell goods to any operator of any William DeVries truck who is attempting to make any sales on the route set out above . . . .

It is the failure to keep this promise that is the foundation of this action. A refusal by the defendants to sell merchandise to the offenders would have availed exactly nothing, as it could have been purchased elsewhere. The promise is devoid of any practical value to the plaintiffs.

■ The measure of damages, in such cases, is the value of the business loss to a plaintiff by the failure to keep the agreement. *Merager v. Turnbull*, 2 Wn.2d 711, 99 P.2d 434, 127 A.L.R. 1142 (1940). The difficulty of establishing damages in such cases has frequently been noted and, conse-

quently, a liquidated damage provision has frequently been written into such contracts. *Management, Inc. v. Schassberger,* 39 Wn.2d 321, 235 P.2d 293 (1951); *Mead v. Anton,* 33 Wn.2d 741, 207 P.2d 227, 10 A.L.R. 2d 588 (1949); *Canady v. Knox,* 43 Wash. 567, 86 Pac. 930 (1906).

■ To have awarded the plaintiffs substantial damages under the circumstances of this case was completely unrealistic.

We do not condone the failure to keep a promise, but certainly no more than nominal damages can be predicated on the failure to keep a promise which, had it been kept, would not have benefited the plaintiffs in any way.

■ We agree with the trial court that William DeVries, Sr. was a proper party defendant. When the contract between William DeVries, Jr. and Mr. and Mrs. Shields was executed, William DeVries, Sr. was the William DeVries Company. The contract, as approved by him, carried the promise of the company along with that of the seller (William DeVries, Jr.) not to sell goods to any operator of a William DeVries truck who was attempting to make any sales on the route sold to the plaintiffs. It is for the breach of this promise that the action was brought. It was unquestionably contemplated that the purchasers under the contract, though not bound to do so, would purchase merchandise from his company and it was expected that wherever the truck went the name "William DeVries Company" would go. The liability, be it great or small, for the breach of the agreement attached to William DeVries, Sr.

The $2,000 judgment is set aside and the cause remanded for the entry of a judgment for nominal damages, *i.e.,* somewhere between $1 and $25. The defendants, as appellants, having prevailed in this court, will recover their costs on appeal.

ROSELLINI, HUNTER, and HALE, JJ., and JAMES, J. Pro Tem., concur.